650 So.2d 1267 (1994)
Cedric HOLT
v.
STATE of Mississippi.
No. 92-KP-0391.
Supreme Court of Mississippi.
December 15, 1994.
Rehearing Denied March 30, 1995.
*1268 Cedric Holt, pro se.
Michael C. Moore, Atty. Gen., Pat S. Flynn, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SMITH, Justice, for the Court:
Cedric Holt files this appeal from the denial of his petition for post conviction relief in the Circuit Court of Warren County, Mississippi. Holt was indicted in July 1990 on two counts of armed robbery, one count of burglary and one count of grand larceny. Following plea negotiations, the charges of armed robbery were reduced to robbery. On August 3, 1990, Holt filed a petition to enter pleas of guilty to all four charges.
The trial judge accepted Holt's guilty pleas and sentenced him to fifteen (15) years and thirteen (13) years on the two robbery counts, to run consecutively, and to ten (10) years on the burglary and grand larceny counts, to run concurrently with the robbery sentences. Thus, Holt was sentenced to a total of 28 years.
Thereafter, Holt filed his motion for post conviction collateral relief, to vacate and set aside plea of guilty, conviction and sentence. Following an evidentiary hearing on March 24, 1992, the trial court dismissed Holt's motion. *1269 We have examined the issues presented by Holt and determined only one issue warrants discussion:
WHETHER THE TRIAL COURT ERRED IN CONDUCTING THE EVIDENTIARY HEARING WITHOUT THE PRESENCE OF THE PROSECUTOR OR A DULY AUTHORIZED ASSISTANT PROSECUTOR WHERE SUCH ACTION CAUSED THE TRIAL COURT TO FUNCTION IN A PROSECUTORIAL ROLE AND AS THE JUDGE OF THE FACTS THEREBY DEFEATING THE COURT'S OBJECTIVITY WHICH THE COURT MUST MAINTAIN.
Holt asserts the failure of the trial judge to require the State to appear at the evidentiary hearing on his motion for post conviction relief or to otherwise respond "tainted" the hearing. Citing Miss. Code Ann. § 99-39-11 (1972), Holt contends its provisions are mandatory and, not being adhered to, urges this Court to reverse and render or reverse and remand his case for further proceedings.
Section 99-39-11 (1972) provides:
(1) The original motion, together with all the files, records, transcripts and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned.
(2) If it plainly appears from the face of the motion, any annexed exhibits and prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the prisoner to be notified.
(3) If the motion is not dismissed under subsection 2 of this section, the judge shall order the state to file an answer or to take such other action as the judge deems appropriate. (emphasis added).
Upon a thorough review of the record in this cause, the mystery is why the trial judge determined that Holt was even entitled to an evidentiary hearing. An examination of the transcript and all attached documents clearly indicates that the trial court could have denied Holt's petition summarily. The transcript and supporting documents absolutely refute all three allegations raised by Holt in his motion for relief.
This Court in Jordan v. State, 577 So.2d 368, 369 (Miss. 1990) stated:
The court upon examination of the application has the authority to dismiss it outright, if it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief.
Regardless, the trial court allowed Holt the opportunity to appear and present evidence in support of his petition. The record indicates Holt appeared pro se, and testified, along with his witnesses, while the State had no representative at the hearing. However, the court did receive an affidavit filed by Holt's trial attorney which refuted the issues raised by Holt. The trial judge explained the State's absence at the start of the proceedings:
THE COURT: Now, Mr. Bullard is not present here at the hearing today. He's involved in a murder trial downstairs at this time in the courtroom. He did file that affidavit. He was the attorney for Mr. Holt at the time of Mr. Holt's pleas on these three cases. He has since been appointed as Assistant District Attorney, so the District Attorney's office is not participating in this matter because he was the Defense Attorney, now Assistant District Attorney.
It should be obvious that this development presented a clear conflict of interest on behalf of the assistant district attorney and readily accounts for the court not requiring the State to be present at Holt's hearing. This situation obviously concerned the trial judge. Judge Vollar's concern about the appearance of a conflict of interest was sufficiently illustrated by his letter dated March 4, 1992 to county prosecutor, John Price. The judge directed Price, instead of the district attorney, to determine, as a result of these proceedings, whether perjury charges against Holt were appropriate. Judge Vollor's *1270 actions evidenced his conflict of interest concerns regarding Bullard a current assistant district attorney but who previously had represented Holt on the very charge under consideration at the PCR hearing. By not requiring the appearance and participation of the district attorney Judge Vollar was simply attempting to avoid any appearance of impropriety on the part of that office. It is also apparent applying § 99-39-11(3), the trial court did not believe an answer by the State was at all necessary. The filing of the affidavit by Bullard on the day of the hearing was apparently the only other appropriate action that the trial judge deemed was necessary in this case. Judge Vollor was able to examine and compare the counter affidavits, the oral testimony and argument submitted by Holt, as well as the previous plea transcript and render his decision without the necessity of requiring the State's presence, or the filing of any additional response, other than Bullard's affidavit.
The trial court reviewed the previous transcript and obviously placed great emphasis upon Holt's prior declarations made under oath during his plea colloquy. This Court has stated that a trial court is entitled to rely on judicial records, which "import absolute verity and may not be impeached by parol evidence" in determining whether to grant an evidentiary hearing. Cole v. State, 608 So.2d 1313, 1321 (Miss. 1992). Cole's petition alleged that he had no assistance of counsel at the plea; yet, the official court record showed that Cole was indeed represented by an attorney. This Court in Mowdy and Scrivner v. State, 638 So.2d 738, 743 (Miss. 1994) stated:
The trial court is right to place great emphasis upon these statements under oath made by Mowdy and Scrivner in open court during the taking of their guilty pleas and sentencing. There should be a strong presumption of validity of anyone's statement under oath. However, we are now faced with one statement or the other not being the truth. The trial judge faced this same dilemma, obviously calling into question the appellants' credibility.
The Mowdy court further stated:
[N]ot all instances of conflicting affidavits will merit an evidentiary hearing. Where the petitioner's version is belied by previous sworn testimony, for example, as to render his affidavit a sham we will allow summary judgment to stand.
Id., citing Harris v. State, 578 So.2d 617, 620 (Miss. 1991).
This Court in Harris addressed similar situations dealing with prior sworn testimony, wherein it was stated:
This is not to say that an evidentiary hearing is to be ordered every time there are contradictory affidavits. In order for a contested fact to require an evidentiary hearing it must be material. Moreover, where an affidavit is belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary, to the extent that the court can conclude that the affidavit is a sham, no hearing is required.
578 So.2d at 620.
Also, in Baker v. State, 358 So.2d 401, 403 (Miss. 1978), this Court stated:
[W]e are mindful, as stated in Blackledge [v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)], that "Solemn declarations in open court carry a strong presumption of verity." The state, the defendant, and the judicial system all have a significant interest in the plea. For the defendant, if guilty, he can begin serving his sentence without facing the delay and agony of a futile trial. Time is conserved for the state prosecutor and an already crowded court system is spared an unnecessary burden. Balanced against these administrative interests of course is the interest of protecting constitutional rights, particularly in the criminal law area.
Finally, in Turner v. State, 590 So.2d 871 (Miss. 1991), where Turner claimed in his petition for post-conviction relief that he had been misinformed about his sentence, yet the transcript of the plea colloquy between Turner and the trial judge belied Turner's claim, *1271 this Court upheld the trial court's summary denial of relief. Turner and the case at bar are different only in that the judge in this case granted Holt the opportunity to present evidence in spite of the fact that the transcript, on its face indicated that a hearing was unnecessary.
What is more important about this situation is even given this opportunity, Holt failed to meet the burden required of him under Miss. Code Ann. § 99-39-23(7) which provides that "no relief shall be granted under this chapter unless the prisoner proves by a preponderance of the evidence that he is entitled to such." See also, McClendon v. State, 539 So.2d 1375 (Miss. 1989); Schmitt v. State, 560 So.2d 148 (Miss. 1990).
Holt insists § 99-39-11(3), mandates a response to his petition, relying on the language, "the judge shall order the state to file an answer or other pleading within the period of time fixed by the court... ." Holt also insists that the presence of a prosecutor is mandatory. The absence of a prosecutor should not serve to reverse Judge Vollar. Neither has the State confessed Holt's petition, as he claims. Holt fails to consider "The Rest Of The Story", that being the additional provision allowing the judge the option to require the State "to take such other action as the judge deems appropriate." The statute does not require the trial judge to order the State to answer if he deems other action appropriate, which is precisely what the trial judge chose do to in the case sub judice. A logical inference may be drawn that the trial judge considered the filing of the affidavit of Bullard and proceeding without a prosecutor, due to the unusual facts of this case, as the only "other action deemed appropriate."
Holt now complains for the first time that the judge should not have considered Bullard's affidavit. There was absolutely nothing improper about Judge Vollar considering the affidavit of assistant district attorney Bullard. Such procedure is permissible by statute, case authority as well and is routinely utilized by trial courts in conducting PCR hearings. See, § 99-39-23(3)(4) Miss. Code Ann. (1984). Besides, Holt could have required and compelled Bullard's attendance at the PCR hearing by subpoena, utilizing the above referenced statute and § 26 Mississippi Constitution. See also, Hickson v. State, 512 So.2d 1, 3 (Miss. 1987); and Rogers v. State, 599 So.2d 930, 935 (Miss. 1992).
It is also noteworthy that Holt did not object to the inclusion of Bullard's affidavit as evidence for the trial judge to consider at Holt's actual PCR hearing. In order that there be preserved error for this Court to review, there must be a contemporaneous objection. Smith v. State, 530 So.2d 155, 161-162 (Miss. 1988); Lockett v. State, 517 So.2d 1317 (Miss. 1987); Temple v. State, 498 So.2d 379 (Miss. 1986). Holt attempts to shift the blame for his failure to object upon the trial judge, claiming that the judge should have inquired of Holt if he had an objection to the court's considering Bullard's affidavit. However, the judge is not required to solicit objections from the parties engaged in litigation. Holt is barred due to his failure to object and his failure to subpoena Bullard.
This was simply a decision by the trial court, finding other action appropriate as authorized by statute. There is no merit to Holt's claims.
Holt further urges the Court that Miss. Code Ann. § 25-31-11 (1984), requires the district attorney to appear and represent the State's interest in all criminal prosecutions and all civil cases in which the State or any county within his district may be interested. In so arguing, Holt ignores the language of subsection (3) of § 25-31-11 which provides:
The validity of any judgment or sentence shall not be affected by the division of jurisdiction under this section, and no judgment or sentence may be reversed or modified upon the basis that the case was not processed according to this section.
We are of the opinion that Holt's case has been in no way prejudiced by the failure of *1272 the trial court to order an answer or an appearance by the district attorney on behalf of the State. No practical remedy could be afforded Holt on reversal and remand. The trial judge has heard all of the evidence Holt had to offer. Judicial efficiency is not served to require this same judge to again reconsider the identical evidence previously offered by Holt. There is no merit to any of his claims and the participation of the State in a hearing would not change this. This is especially true where the trial court determined that other action by the court was more appropriate.
Finally, Holt alleges that the trial judge was biased and prejudiced against him in asking that the prosecutor look at this case and determine whether or not perjury charges were warranted. We find that there is nothing out of place with this procedure. This Court has even suggested that the issue of whether or not perjury has been committed by a defendant filing conflicting affidavits versus sworn testimony at a subsequent proceeding might warrant appropriate action by a grand jury. See Smith v. State, 636 So.2d 1220 (Miss. 1994). Also, see, Sanders v. State, 440 So.2d 278, 289 (Miss. 1983) (Roy Noble Lee, J., Specially Concurring).
Suffice to say, the court did not put much faith and credit in the testimony of Holt or his witnesses. Rather, it is apparent that Judge Vollar, in considering his decision, relied more heavily upon Holt's prior sworn testimony at his plea colloquy. It is also obvious that the court was presented with the identical dilemma as was the trial judge in Mowdy and Scrivner v. State; one statement or the other was not true. But, the ultimate question for the court to determine was which statement was the truth? Holt, under oath, now alleges a different version of this issue as compared to his original version, made under oath to Judge Vollar at the plea colloquy. Holt claims "trial by affidavit," but such is not the case before us, as clearly supported by the record. The previous official transcript was made a part of this record and relied upon by Judge Vollar in arriving at his decision. Judge Vollar proceeded through the official transcript, page by page, while explaining his decision to Holt. Faced with the dilemma of one statement or the other not being the truth, Holt's credibility was called into question by Judge Vollar. The court saw through this petition for what it actually was; a frivolous, feeble attempt to get out of a validly imposed sentence. Holt was lying one time or the other, and subject to possible perjury charges, because he was under oath on both occasions. Judge Vollar was right to place great emphasis on Holt's prior sworn plea. Sworn testimony is given under penalty of perjury. We have a statute prohibiting perjury. Suspected violations should be investigated and if sufficient grounds of violation of the law are uncovered during such investigations, the law should be enforced. If a judge suspects perjury, he should order an investigation, as did Judge Vollar.
It is certainly preferable that the State be in attendance to present its defense to a petition, rather than placing the court in a position of conducting the hearing by itself. In the case sub judice, because of the apparent conflict of interest of attorney Bullard, and the trial judge thus not requiring another prosecutor from the district attorney's office to attend or respond, a better procedure would have been served by the trial judge having the county attorney attend and represent the State's interest. Trial judges and district attorneys should note this prospectively in future PCR cases. However, under the facts of this case, as supported by the record, Judge Vollar was fair and extremely patient with Holt, allowing him to testify, offer all evidence, testimony and argument that Holt desired to submit to the court.
The bottom line to all of this is that after considering all evidence and the previous record of Holt's plea and sentencing hearing the court ruled against Holt. Judge Vollar relied on the greater credibility of the affidavit of Bullard and the presumption of validity of Holt's previously entered plea of guilt under *1273 oath, rather than believing Holt or his witnesses.
Contrary to Holt's allegations, there is nothing in this record to indicate prejudice, bias, a "tainted" hearing, a "prosecutor judge assuming an advocate's role", or the judge not maintaining his objectivity. Neither is there a problem with the procedure followed by this trial judge based on the unusual facts of this case.
More importantly, how is Holt prejudiced by the absence of a State's attorney? Holt failed to show this Court how his position is damaged the least bit by the absence of a prosecutor. If anything, the mere presence and vigorous examination and cross-examination of witnesses by a zealous prosecutor would most certainly have enhanced the State's position. Absence of a prosecutor appears to harm only the State. At the very least, if there is any prejudice here, it clearly weighs against the State of Mississippi, not Holt.
Holt's remedy for the failure of the trial court to order a response and appearance by the State would be to reverse and render and set him free. We are of the opinion that there are no grounds alleged by Holt to warrant such drastic action by this Court. Neither is there any meritorious reason for this Court to remand Holt's case requiring Judge Vollar, the trial judge, to rehear the same evidence that he has already considered and rejected. Judicial efficiency as well as common sense practicality is served by affirming the trial court in its dismissal of Holt's petition.
DENIAL OF POST CONVICTION RELIEF AFFIRMED.
DAN M. LEE and PRATHER, P.JJ., and JAMES L. ROBERTS, Jr., J., concur.
McRAE, J., concurs in results only.
HAWKINS, C.J., dissents with separate written opinion joined by SULLIVAN, BANKS and PITTMAN, JJ.
HAWKINS, Chief Justice, dissenting:
I respectfully dissent.
Experience has been that petitioners in post-conviction relief cases have virtually no chance of success. The vast majority of them are dismissed on the pleadings, and those few that survive are almost always shown at a generally short hearing to be completely devoid of merit, and accordingly dismissed. That should have been the fate of this case. Instead, the circuit judge ignored the statute and conducted an adversarial hearing on his own. Thus we have an appeal for the circuit judge's failure to follow simple statutory requirements and the canons of ethics, and this Court has had an inordinate amount of time consumed on a matter that probably would have been terminated in short order by proper procedure in the circuit court.
I would remand this case to the circuit court for a hearing as mandated by statute.
There is more than one criminal statute involving robbery. Miss. Code Ann. § 97-3-73 defines one type of robbery as feloniously taking the personal property of another by either violence or putting such person in fear of some immediate injury. Miss. Code Ann. § 97-3-75 provides the penalty under this section of a maximum sentence of fifteen years and no minimum. Miss. Code Ann. § 97-3-79 defines a more serious robbery through exhibition of a deadly weapon. The punishment for violation of this section is a maximum of life imprisonment (if fixed by the jury) and minimum of three years imprisonment.[1]
In July, 1990, Cedric Holt was indicted upon three separate occasions by the grand jury of Warren County. Two indictments were for robbery by exhibition of a deadly weapon, thus charging him with robbery in violation of § 97-3-79. The third indictment was for burglary and larceny. The court on July 11 appointed John W. Bullard, public defender of Warren County, to represent Holt.
*1274 On August 4, 1990, Holt executed three petitions to enter a plea of guilty to each indictment. On August 3 the circuit judge conducted a hearing at which time Holt pleaded guilty to armed robbery under Miss. Code Ann. § 97-3-73 under each of the robbery indictments and guilty to the indictment for burglary and larceny. Following the hearing the court by orders dated August 3, 1990, sentenced Holt to fifteen years under one indictment for robbery, thirteen years under another, both sentences to run consecutively, and ten years under the burglary/larceny indictment, to run concurrently with the first sentence. Holt was thus sentenced to serve a total of twenty-eight years imprisonment.
In January, 1992, Holt filed a motion for post-conviction relief pursuant to the Mississippi Post-Conviction Relief Act, Miss. Code Ann. § 99-39-5, et seq. Holt's affidavit to the motion stated in pertinent part:
1. I am an adult and my age is 20 years old.
2. That on August 3, 1990 I was informed by Mr. John Bullard, in the presence of my Mother, that I would plead guilty to the charges against me that I would receive a sentence of 7 years in the Mississippi State Penitentiary.
3. That Mr. Bullard told me that if I did not plead guilty, I would go to trial and that I would get life sentences.
4. I advised Mr. Bullard that I was not guilty of the charges but Mr. Bullard advised me that this did not matter since a jury would find me guilty anyway and that my chances of winning the case on appeal would be impossible.
5. That I told Mr. Bullard that I would agree to plead guilty only if the sentence of seven (7) years would be imposed.
6. That Mr. Bullard told me to go before the court and answer the judge's question with a yes or no and not to ask questions because he had already made that agreement with the state and I would receive a sentence of 7 years.
7. That Mr. Bullard never advised me of any mandatory minimum sentence or and [sic] maximum sentence for any crime.
8. That my Mother, Ms. Laura Virginia Holt, was present at all times while I talked to Mr. Bullard on this date and regarding the matters mentioned in this affidavit.
The affidavit of Laura Virginia Holt, his mother, stated that she was present when Bullard advised her son, and also:
5. That Mr. Bullard did advise Cedric and myself that if Cedric entered entered [sic] a plea of guilty to the charges pending against him he would receive a sentence of seven years and that this had been previously agreed to by the District Attorney's Office per the Assistant District Attorney.
6. That Mr. Bullard did inform Cedric, in my presence, that he was to answer "yes" or "no" to the Court's questions and that he should not ask any questions before the judge when he entered the pleas or the court would not accept the pleas.
7. Mr. Bullard never advised Cedric of any mandatory minimum sentence which he could receive nor did Mr. Bullard mention anything regarding a maximum but Mr. Bullard did state specifically that if Cedric entered a plea of guilty to the charges he would serve a seven (7) year sentence in the penitentiary and that would be all.
On March 11, 1992, the circuit judge entered an order directed to the Mississippi Department of Corrections to transport Holt to the Warren County Circuit Court to be present at 1:30 p.m. on March 24.
On March 24, 1992, the circuit judge on his own conducted a hearing on Holt's petition. The court noted that Bullard was not present, that he was then an assistant district attorney engaged in prosecution of a murder trial downstairs, but that he had filed an affidavit. The affidavit of Bullard is dated March 24, 1992, and Holt first saw it when it was handed to him by the circuit judge during the hearing. While Bullard's affidavit *1275 does state that he advised Holt he would receive sentences totaling twenty-eight years, as the court did in fact sentence him, it does not specifically deny the allegations of Holt's affidavit.
Following the hearing the court denied Holt's motion. I would reverse and remand.

LAW
The Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-1, et. seq., albeit severely limited in scope, sets forth rules of procedure which all courts of this State are by law obligated to follow.
Mississippi Code Annotated § 99-39-3 Purpose states:
(1) The purpose of this chapter is to revise, streamline and clarify the rules and statutes pertaining to post-conviction collateral relief law and procedures, to resolve any conflicts therein and to provide the courts of this state with an exclusive and uniform procedure for the collateral review of convictions and sentences... .
(2) ... [T]he purpose of this chapter is to provide prisoners with a procedure, limited in nature, to review those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal.
Thus, the courts of this state are required to follow the statutory procedures set forth in the Act.
Mississippi Code Annotated 99-39-7 states, "The motion under this chapter shall be filed as a original civil action in the trial court ..." thus making the action a civil suit. Mississippi Code Annotated 99-39-11(5) requires that the prisoner deliver or serve a copy of the motion, together with a notice of its filing on the State, and concludes with the following sentence: "The filing of the motion shall not require an answer or other motion unless so ordered by the court under section 99-39-11(3)." (Emphasis added.) The above underscored "or other motion" is significant when the following section, Miss. Code Ann. § 99-39-11 (1972), is considered.
(1) The original motion, together with all the files, records, transcripts and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned.
(2) If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the prisoner to be notified.
(3) If the motion is not dismissed under subsection 2 of this section, the judge shall order the state to file an answer or to take such other action as the judge deems appropriate. (Emphasis added.)
As the record reveals, Holt filed his petition on December 27, 1991, which the court obviously found was not subject to dismissal under § 99-39-11(2) (Supp. 1993) because no order of dismissal was entered at the time. Having determined that the petitioner was entitled to a hearing, the court should have, under § 99-39-11(3) (Supp. 1993), either entered an order requiring the State to file an answer or "other motion" within a time period fixed by the court, or take such other action as the court deemed appropriate. The court, however, entered no order as required by § 99-39-11(3), but instead on its own conducted a hearing on March 24, 1992, and dismissed the motion.
The requirements of § 99-39-11(3) are mandatory. Ragland v. State, 586 So.2d 170 (Miss. 1991).
If the statutes were not already sufficiently clear, Ragland further mandates that a petition not dismissed under Miss. Code Ann. § 99-39-11(2) requires some response by the State. Just as obvious, any such response should show service upon the petitioner. Miss. Code Ann. § 99-39-13 (Supp. 1993) requires that the State's answer "respond to all the allegations of the motion and shall assert such affirmative defenses as the state may deem appropriate." (Emphasis added.) *1276 Miss. Code Ann. § 99-39-15 (Supp. 1993) authorizes full discovery under the Mississippi Rules of Civil Procedure. Miss. Code Ann. § 99-13-17 authorizes expansion of the record, and Miss. Code Ann. § 99-39-19 (Supp. 1993) authorizes summary judgment disposition of the motions. Thus, the language of Miss. Code Ann. § 99-39-11(3) requiring some kind of response from the State is emphasized by the sections preceding and following.
A motion, or petition, filed under the Act which is not summarily dismissed under Miss. Code Ann. § 99-39-11(2) becomes a civil lawsuit to be presented and handled as any other civil action, unless otherwise provided by the Act.
Of course, the circuit judge under the statute should have entered an order requiring the State to file some responsive pleading and on the day of the hearing for Bullard to appear and refute Holt's and his mother's testimony. By following this simple statutory procedure, the hearing would have been over and done with in short order, and this Court would probably have never heard of this case.
How does the majority handle the failure of the court to require the State to file any pleading, or for the State to be present at the hearing, and instead conducting the trial without benefit of counsel on either side?
In its apologia for the circuit judge, the majority first tells us that no hearing was required, anyway. "An examination of the transcripts and all attached documents clearly indicates that the trial court could have denied Holt's petition summarily." Majority Opinion, p. 1269. And "... `A' hearing was unnecessary." Majority Opinion, p. 1271. How so?
Holt's and his mother, Laura Virginia Holt, stated under oath in their affidavits that Holt had been misled by his attorney as to the sentence he would receive if he would plead guilty. Whether that indeed occurred or not, no one in the world knows except the three individuals in on the conversation, namely: Holt, his mother and his lawyer.
In three quite recent cases we have held that if a defendant by his affidavit states he was misinformed by his attorney as to any material fact which induced him to enter a plea of guilty when he would not otherwise have done so, he is entitled to an evidentiary hearing. Washington v. State, 620 So.2d 966 (Miss. 1993); Alexander v. State, 605 So.2d 1170, 1172 (Miss. 1992); Myers v. State, 583 So.2d 174 (Miss. 1991). Holt met that test. If the majority is overruling Washington, Alexander and Myers, it would do the bench and bar a favor by expressly saying so.
The circuit judge obviously thought Holt was entitled to an evidentiary hearing, or he would not have put the taxpayers to the expense of having him transported to Warren County.
The majority next holds that the "filing of the affidavit" of Bullard on the day of the hearing satisfied any pleading requirement under Miss. Code Ann. § 99-39-11(3), Majority Opinion, pp. 1270, 1271, and was all that was required thereasto. As to the failure of the State to have any representative at the hearing, the majority states that because Bullard was then an assistant district attorney, that somehow created a conflict of interest for the entire office of the district attorney. Majority Opinion, pp. 1269-1270. The fact that Bullard would have had a conflict of interest in representing the State manifestly had nothing to do with keeping either the district attorney or another one of his assistants from appearing and representing the State, or Bullard from appearing and testifying. The circuit judge had put the taxpayers to the time, expense and risk transporting a prisoner from Parchman to Vicksburg, yet he could not put the district attorney to the inconvenience of responding to Holt's petition, or for Bullard to come upstairs and testify?
Is it due process, is it fair for a person to have no service on him of the contention of the other side until he is presenting his case? Rule 5, Miss.R.Civ.P. requires every pleading, motion, "and similar paper shall be served upon each of the parties." Holt is a *1277 ninth-grade dropout who was appearing before the circuit judge without a lawyer.[2]
Next, consider the majority's nonchalance in the judge's conducting the hearing on his own, a minor aberration. As noted, the circuit judge conducted the hearing, denied Holt's motion, and directed the county attorney to determine if Holt should be prosecuted for perjury, all on his own.[3]
No one will argue that an impartial, objective judge is fundamental to justice. When a judge hears a case he must concentrate solely on the merits and law of the case, and there must be nothing which will distract or interfere with his making a decision one way or the other. Beyond this, it is all important that the public's eye will find nothing about the judge's behavior which will keep him from being neutral, detached, objective. Jenkins v. Forrest County General Hospital, 542 So.2d 1180 (Miss. 1989).
When a judge loses objectivity he loses credibility. Respect cannot exist without credibility.
When A and B have a lawsuit against each other, and the judge tells A he can stay home, and there is no need for him to come to court, by that very act he, the judge, has shattered his own objectivity, for he has signaled to A that the decision will be in his favor. How can it be otherwise? When B comes to court the judge obviously cannot decide in B's favor because in doing so he would be committing the greatest outrage imaginable against A: deciding a lawsuit against him behind his back, and after he had told him he could stay home.
If this were even an ordinary garden variety lawsuit and a judge chose to take on one side by himself, deafening decibels of uproar would accompany the appeal. Unfortunately, this case does not rise to the level of even an ordinary case. It involves a member of the lowest, most despicable level of society: a convicted felon. Moreover, this felon is on one side of a type of lawsuit no judge wants to hear: a petition for post-conviction relief. Judges' reluctance to hear these petitions for post-conviction relief is understandable. The overwhelming majority have so little merit that if success in them were based solely on the law of averages, the odds in favor of the petitioner are about that of a state lottery.
That, however, is not the point, or perhaps that is the very point here. The Legislature in the Mississippi Uniform Post-Conviction Collateral Relief Act has given persons convicted of crime a right to petition a court and present a reason qualified under the Act why his or her conviction should be set aside. The window of opportunity thus provided is meticulously framed and very small, so much so that only a few even qualify to be heard on the merits. Yet we should never forget if the law is to maintain its majesty, a judge owes even a convict the duty to protect whatever rights he does have remaining in a court of law. The grandeur of the law is not measured by the importance of the person whose rights are to be protected.
In this case Holt was entitled to a trial judge who was not boxed in for any reason when he heard his petition and could be completely objective. He didn't get it.
I have the capacity of understanding a busy, over-worked trial judge erring at times *1278 in trial procedures and decorum.[4] This Court's putting its stamp of approval on trial proceedings as this is another matter. As stated by the Supreme Court of California in McCartney v. Commission on Judicial Qualifications, 12 Cal.3d 512, 116 Cal. Rptr. 260, 274-75, 526 P.2d 268, 282-83 (1974), a judge's "assumption of the role of advocate" can be "particularly destructive of the image of the court as an impartial forum for the determination of truth." The Kentucky case of Evans v. Humphrey, 281 Ky. 254, 135 S.W.2d 915 (1940) echoes this fundamental point.
We have little question that to prevent a miscarriage of justice a question or method of practice may sometimes be suggested by the judge presiding over a cause without disqualification to preside in the cause thereby being visited upon him though, undoubtedly, this power should be very sparingly used  the judge may not act in the dual capacity of judge and advocate.
Id. S.W.2d at 918.
Furthermore, People v. Curtis, 389 Mich. 698, 209 N.W.2d 243 (1973) states, "It has long been the public policy of this State that a trial judge may not act in any other capacity than as judge in those cases present in his court." Id. 209 N.W.2d at 248.
Such an usurpation by the judge of the prosecutorial role also constitutes an unconstitutional violation of the separation of powers. "For the judiciary to claim power to control the institution and conduct of prosecutions would be an intrusion on the power of the executive branch of government and a violation of the constitutional separation of powers... . It also violates our sense of fair play." People ex rel. Leonard v. Papp, 386 Mich. 672, 194 N.W.2d 693 (1972). The majority cannot mean to say that the Post-Conviction Relief Act is meant to have the judicial branch to do the job of the executive. This unprovoked redrawing of constitutional lines is inexplicable.
After taking it upon himself to conduct the hearing all on his own, the circuit judge made this hearing even more unfair by considering the affidavit of Bullard as evidence. Holt was without a lawyer, he could not cross-examine the affidavit. The majority tells us Holt should have known enough law to object.
Whatever the outcome of Holt's motion may be, he should be guaranteed a hearing which comports with fair and judicious procedure.
Finally, the majority states, "Holt's remedy for failure of the trial court to order a response and appearance by the State would be to reverse and render and set him free." Majority Opinion, p. 1271.
This is astonishing. All I suggest is that the State be required to file the appropriate pleading and that Holt be given a hearing at which the State is represented. This would require but a modest amount of the court's and the State's time, and most assuredly could and should long since have been attended to. Instead, this Court's time has been expended in an appeal and protracted consideration of this matter by this Court. The majority also addresses the merits of Holt's petition. Because the statutory requirements were not met, and the circuit judge's conducting the hearing on his own was improper, any expression of opinion on the merits of Holt's motion is premature. Following the hearing the circuit judge would be at perfect liberty to decide whether there was any merit to Holt's claim or not, and if there was any substantial evidence supporting his finding, that would be it.
How requiring a trial judge to conduct a judicious proceeding operates to discharge a prisoner escapes me.
Moreover, if Holt's wildest dream came true, and the circuit judge did sustain his motion, it would by no means result in setting him free. At the very best for Holt  and, if we follow the law of averages in these cases, at most his hope can only be infinitesimal  even if the circuit judge sustained his motion, it would simply mean he would stand *1279 trial under two indictments of armed robbery and one for burglary and larceny, not go free.
A far better course of this Court would be to simply remand this matter to the circuit court of Warren County and direct the State to make the appropriate response to Holt's motion, and the court to conduct an evidentiary hearing. This is simple, it is judicious, and it follows the statute and precedent.[5]
SULLIVAN, PITTMAN and BANKS, JJ., concur.

APPENDIX

APPENDIX ON JUDGE'S DECISION TO HAVE PERJURY PROCEEDINGS
The following occurred at Holt's guilty plea hearing August 3, 1990:
THE COURT:
Q. Okay. Do you understand that the maximum sentence that can be imposed upon you on a plea of guilty of robbery is fifteen years for simple robbery?
A. Yes, sir.
Q. The least that can be imposed is one year. Is that correct?
MR. BULLARD: That's correct.
Q. Armed robbery is  what's the maximum sentence on armed robbery?
MR. BULLARD: Life.
(Vol. I, pp. 23-34.)
At Holt's post-conviction relief hearing on March 28, 1992, the only complaint both he and his mother made was that Bullard had told him he would receive a sentence of seven years and be eligible for parole in three and a half years. Their complaint was not what happened at the guilty plea hearing, but what they claimed Bullard had informed them prior to the hearing. (Vol. II, pp. 4, 6). The circuit judge chose to go outside and beyond this. The following occurred:
THE COURT:
Now you made allegations [in the petition] that you were not informed of the minimum and maximum sentence. What do you have to say about that.

*1280 THE DEFENDANT:
I wasn't informed, I wasn't informed of the minimum of sentencing, it's not a minimum sentence on armed robbery, which you said it was one (1) year, which I got in my paper right now. But it was one (1) year. It's not a minimum sentence on armed robbery.
(Vol. II, p. 8.)
At the conclusion of the hearing, the circuit judge made the following ruling:
The Court finds that your assertions here today, that you were not informed of the minimum and maximum sentences, as not believable. The Court finds that your assertions that you thought you were going to serve less, you were going to receive a sentence less than 28 years, not believable.
The Court then ruled that it was going to call upon the county attorney to look into charges of perjury against Holt. (Vol. II, p. 13.)
All this is marvelously strange. Holt was quite correct in telling the court there was no minimum sentence for "simple robbery," as the circuit judge had characterized it. Conviction under Miss. Code Ann. § 97-3-73 carries a maximum penalty of fifteen years, but no minimum. Miss. Code Ann. § 97-3-75. As to the perjury for what Holt and his mother claimed Bullard told him, the circuit judge did not even have Bullard at the hearing to refute their testimony. Did the circuit judge plan to charge Laura Holt with perjury as well?
NOTES
[1] Conviction of robbery with a firearm also carries with it severe restrictions on eligibility for parole. Miss. Code Ann. §§ 47-5-139(1)(e), 47-7-3(1)(d).
[2] The affidavit clearly was hearsay. The majority tells us that Holt waived any errors as to Bullard not appearing because he could have summoned Bullard to appear, and if he had any objection to the affidavit he should have objected to its introduction. Maj. Op., p. 1271. The majority compounds the absurdity of requiring Holt, a ninth-grade dropout who had no lawyer at the hearing, to formally object to a document the circuit judge handed him, along with giving Holt with some bad legal advice. Why on earth would Holt want to subpoena Bullard? It was incumbent upon the State for Bullard to appear in person, not by affidavit, and contradict the Holts.
[3] While the circuit judge's decision that Holt should be prosecuted for perjury has very little to do with the matters addressed on this appeal, it is symptomatic of all that is wrong about the manner this case was handled in circuit court. For any reader who might be interested, the perjury matter is discussed in an appendix attached.
[4] Indeed, Holt in this case may have received a far more lenient sentence than he deserved.
[5] Holt is a ninth-grade dropout. In his affidavit he swore that Bullard had told him that if he pleaded guilty he would receive a sentence of seven years, and only to answer the judge's questions with a yes or no, because the agreement had already been made with the State. This was his entire gripe.

At the hearing he testified that Bullard had said "something about seven years and I would be eligible for parole in three and a half years." Again, "I'm complaining about my sentences running wild. My lawyer told me I would get seven years sentence and be eligible for parole in three and a half years. Why didn't he tell me I would be eligible for parole in three and a half years? I can't do three and a half years on a twenty-eight year sentence?" Mrs. Laura Virginia Holt, the mother, testified to the same promises made by Bullard, that her son would be eligible in three and one-half years. (Vol. II, p. 6).
When the guilty pleas of Holt were taken and Holt told by the court that the State recommended a total sentence of twenty-eight years, the following appears in the record:
Q. The State has stated what it will recommend. Has anyone led you to believe that the State would recommend a sentence less than that?
(DEFENDANT SPOKE WITH COUNSEL)
A. Yes, they did.
Q. They did?
A. Yes.
MR. BULLARD: Excuse me, Your Honor.
(COUNSEL SPOKE WITH DEFENDANT).
A. Uh, no.
Q. You understand that?
A. Yes, sir.
Q. The State's never recommended any sentence less than that have they?
A. No, sir.
Q. Are you sure of that?
A. Yes, sir.
Q. What did you think I said?
A. The State haven't recommended no less than the ten years.
(R.I, p. 23)
Holt's answer, "Yes, they did," showed there was some misunderstanding between him and his counsel as to his sentence.
Never answered was whether anyone had led Holt to believe the State would make a recommendation of less than 28 years.
Of course, all of this could have been cleared up by having Bullard testify at the hearing.