996 So.2d 85 (2008)
Charles Douglas OWENS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-CA-00153-COA.
Court of Appeals of Mississippi.
April 8, 2008.
Rehearing Denied September 2, 2008.
Certiorari Denied December 11, 2008.
*86 Jim Davis, attorney for appellant.
Office of the Attorney General by Deshun Terrell Martin, attorney for appellee.
Before LEE, P.J., CHANDLER and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Charles Douglas Owens pleaded guilty in the Circuit Court of Harrison County to one count of armed robbery and one count of aggravated assault for robbing and shooting his employer. Owens was sentenced to thirty years for the armed robbery and ten years for the aggravated assault, with the sentences to run consecutively for a total of forty years in the custody of the Mississippi Department *87 of Corrections (MDOC). Owens filed for post-conviction relief with the trial court, which was denied. From the denial Owens brings this appeal, raising the following issues:
I. The trial court was in error when it summarily dismissed Owens's petition for post-conviction relief without holding an evidentiary hearing.
II. The trial court was in error when it sentenced Owens to a term of years that exceeded the State's recommended sentence which Owens had detrimentally relied upon prior to the entry of his pleas.
III. The trial court was in error when it found that Owens's plea was freely and voluntarily entered.
¶ 2. Finding no merit to any of Owens's alleged errors, we affirm the decision of the trial court.

FACTS AND PROCEDURAL HISTORY
¶ 3. A Harrison County grand jury returned a two-count indictment against Owens on May 20, 2002, for the armed robbery and aggravated assault of his employer Raleigh Richard Carter, a retired school teacher who owned a beach-side vending service. Owens admitted that he and Carter were discussing Owens's wages when the conversation became heated. At that point, Owens hit Carter on the head with a claw hammer, causing skull fractures. Then, as the two men "tussled," Owens pulled a pistol out of his pocket and fired at Carter. The bullet struck Carter in the chest. Owens then taped the hands of the bleeding Carter, took $1,400 from him, and fled to Texas. Carter was able to crawl out of a window and into his car. He summoned help from security at the nearby Edgewater Mall. As a result of Owens's actions, Carter's skull was cracked and bones were broken in his face. Carter has difficulty talking and can only speak in a whisper. Carter has no feeling on the right side of his face as a result of being pistol-whipped by Owens. The bullet remains lodged in Carter's aorta and cannot be surgically removed. The prosecutor said that it was "just an absolute one in a million [chance] that [Carter] lived."
¶ 4. On May 2, 2002, Owens petitioned the trial court, as an indigent, for court-appointed representation. On May 29, 2002, Jack Denton of Biloxi was appointed as counsel. On December 30, 2002, Owens filed a bar complaint with the Mississippi Bar against Denton, seeking to have him removed as his attorney. Owens claimed primarily that Denton had met with him only once in the seven months since Denton was appointed to represent him, and he had received only seven parcels of correspondence from Denton. On January 3, 2003, the Bar rejected Owens's complaint, stating that attorneys for criminal defendants are appointed by the circuit court and any requests to have a court-appointed attorney removed must be directed to the circuit court. Four days later, Denton filed a motion to withdraw as Owens's counsel. Denton said that the allegations that Owens made against him in the Bar complaint were "categorically false." Denton rebutted each allegation with documents showing the extent of his work on Owens's case. Denton said that Owens was "hearing what he wanted to hear" and had "unrealistic expectations" about how his case would turn out. For example, in a December 23, 2002, letter Denton responded to Owens's question, which asked whether Owens might enlist in the military as an alternative sentence. Denton told Owens that he had discussed Owens's case with the district attorney "at some length," and the district attorney "made it very clear that he intends to prosecute this case *88 to [the] fullest extent allowed by law." In an earlier letter from Denton to Owens, Denton noted that he had reviewed the prosecution's discovery and based upon the "voluminous amount of evidence" against Owens, Denton suggested that Owens consider a plea of guilty. As Owens had given a written and a videotaped confession, Denton informed Owens that "jail time is going to be unavoidable."
¶ 5. On February 4, 2003, a hearing was held on Denton's motion to withdraw as Owens's counsel. After the trial judge updated himself on the court file, there was a discussion among Owens, Denton, the assistant district attorney, and the court. The trial court asked Owens what his response was to Denton's motion to withdraw. Owens said that his disagreements with Denton were mostly miscommunications and that he filed the bar complaint "to move forward" in his case. Owens said that he was unaware of the efforts Denton had made in his case, including the three visits with the district attorney's office to review the evidence. The trial judge then told the parties that he had two unrelated pleas he had to hear and suggested that Owens visit with Denton in a backroom before the court made a decision about removing Denton as his attorney.
¶ 6. Following the recess, Owens said that he was "satisfied to move forward" with Denton as his counsel. In turn, Denton told the trial court that he was withdrawing his motion to withdraw as Owens's attorney. Also, Owens told the trial court that he wanted to plead guilty to the charges. The trial court asked Owens why he wanted to change his plea to guilty. Owens replied that it was his intention all along to plead guilty. The trial court asked Owens if he were pleading guilty because he was in fact guilty, or was he pleading guilty for any other reason. Owens responded, "I'm pleading guilty because right is right and wrong is wrong, and I made a mistake."
¶ 7. Owens then submitted a petition to enter a guilty plea to both counts. The trial court asked Owens if he had read every sentence in every paragraph of the petition prior to signing it. Owens responded, "Yes, sir." In addition, Owens said his attorney went over the petition with him. Owens volunteered to the trial court that he was aware of the constitutional rights he was waiving by pleading guilty because he had been a reserve law enforcement officer in Anderson County, South Carolina, as well as an emergency medical technician.
¶ 8. The plea colloquy continued:
THE COURT: Do you have any questions about your rights or about this petition or anything that concerns you about what you're doing here today that you want to pause and either ask Mr. Denton or you can ask me as far as entering the plea of guilty? Not at the sentencing stage, we'll get there for a later time. But do you have any questions at all in your mind as to your rights? Do you have any questions about your rights?
MR. OWENS: No, sir.
THE COURT: You don't think it's necessary for me to explain them further to you?
MR. OWENS: No, sir. I understand them.
THE COURT: All right. Do you have any questions about entering a plea at this time that you want to go over with me, and again we're going to have a sentencing later?
MR. OWENS: No, your honor.
THE COURT: All right.... [L]et me ask you this; has anybody forced you to give up your rights?

*89 MR. OWENS: No, sir.
THE COURT: Threatened you in any manner?
MR. OWENS: No, sir.
THE COURT: Offered you any reward?
MR. OWENS: No, sir.
THE COURT: Did I, Mr. Denton, Mr. Ward, any of the deputies or anybody in the back influence you in any way to give up your rights?
MR. OWENS: No, your honor.
¶ 9. After the trial judge satisfied himself that Owens's guilty plea was freely and voluntary given, he then questioned Owens as to his guilt of the charges. Owens admitted his guilt to Count I, armed robbery, by taking and carrying away $1,400 belonging to Carter by the exhibition of a deadly weapon, a pistol; and he admitted his guilt to Count II, the aggravated assault of Carter, by shooting him with a deadly weapon, a handgun. The State recommended a sentence of twenty-five-years on the armed robbery count and twenty years on the aggravated assault count, with the sentences to run concurrently.
¶ 10. At Owens's request, the trial court deferred sentencing pending a presentence investigation to allow Owens's relatives from South Carolina to be present to offer allocution statements on his behalf. It was determined that both Texas and Florida had holds on Owens, and he was wanted on a forgery charge in his home state of South Carolina.
¶ 11. On March 17, 2003, the sentencing hearing took place. The trial judge allowed seven of Owens's family members and his former pastor, all from South Carolina, to offer their favorable opinions about Owens to the court and to ask for mercy for him. Owens then spoke on his own behalf expressing his remorse and regret for his actions.
¶ 12. The trial judge said that from his experience as a district attorney and judge, Owens's crime was one of the worst, if not the worst, armed robberies that he had seen. The trial judge said that the State's recommendation of twenty-five years was in the mid-range of possible sentences. He determined that the vicious nature of Owens's crime warranted imposition of a sentence in the upper limits of the sentencing statutes. The trial court then sentenced Owens to thirty years on the armed robbery count and ten years on the aggravated assault count, with the sentences to run consecutively, for a total sentence of forty years in the custody of MDOC. The sentencing order was entered on March 17, 2003.
¶ 13. On March 20, 2003, Owens filed a pro se motion for reconsideration of sentence, the crux of which was that his sentence should be shortened because he is "a likely candidate for successful rehabilitation in the custody of MDOC" because of his age. Owens also placed in the record letters from seven family members in support of him. On March 27, 2003, his court-appointed attorney filed a motion for reconsideration of the sentence or, in the alternative, a motion to withdraw pleas. He based his motion upon a theory of disproportionality of Owens's sentence. On April 14, 2003, Owens filed another pro se motion, seeking to withdraw his guilty plea. There is no indication in the record that a ruling was ever obtained on any of the motions.
¶ 14. The next action in the record is nearly three years later, on February 2, 2006, when Owens's new counsel filed a motion for post-conviction relief, making three arguments.
¶ 15. First, Owens argued that he had material facts that were not presented to *90 the Court at the time of his plea and sentence which, if allowed, would have greatly changed the sentence which he was given by the trial court. Owens claims that the material facts that were not considered by the trial court were that Owens had completed various Bible studies and had become an ordained minister in prison. Owens signed his name on fund-raising materials for his ministry as Rev. Charles Douglas Owens II. Owens argued that a criminal defendant is allowed to present mitigation evidence on his behalf at the time of sentencing and that if the trial court had known of his religious prowess at the time of sentencing, Owens's sentencing might have been different. In his four-page opinion denying Owens's post-conviction relief motion, the trial court denied error on this issue. The trial judge pointed out that most of the exhibits which Owens attached to his petition were dated after the sentencing date and could not have been presented to the court at the time of sentencing. As to the documents dated prior to the sentencing, the trial court said that there was no allegation or proof that "with due diligence" the document could not have been presented to the court. Also, the trial court said that none of the exhibits, which predated the sentencing, would have resulted in a different sentence.
¶ 16. Owens's second issue in his post-conviction relief motion was that his plea was involuntary, coerced, and was a product of plea negotiations in which the trial court unlawfully participated. Owens quoted the trial court at length, claiming that the quoted passages showed that the trial judge got involved in negotiating a guilty plea with Owens. In denying this issue, the trial court said that Owens was "less than candid" with his allegations that the trial judge was involved in plea negotiations, and the excerpts from the plea hearing quoted by Owens were "spun out of context."
¶ 17. Owens's final post-conviction relief argument was that he should be allowed to withdraw his guilty plea and be resentenced because there was a binding agreement between the trial court, the State and Owens as to his sentence. Owens argued that because of the sentence agreement, the doctrine of specific performance should be applied, and he should be allowed to be sentenced based upon the agreed upon twenty-five-year sentence. Rejecting this argument, the trial court explained the chronology of the proceedings and the context in which the quoted statements were made. The judge noted that all of the quoted excerpts were made during the part of the hearing devoted to the attorney's motion to withdraw as Owens's counsel, and they were not made during Owens's plea hearing or at his sentencing hearing. The trial court quoted the plea colloquy where Owens was asked if he was pleading guilty because he was guilty, to which Owens responded, "I'm pleading guilty because right is right and wrong is wrong and I made a mistake." The trial court further quoted Owens's response of "Yes, sir." to the inquiry of whether he had done what was alleged in two criminal counts. The trial court found this issue to be without merit. It is from this ruling that Owens now appeals.

STANDARD OF REVIEW
¶ 18. "In reviewing a trial court's decision to deny a petition for post conviction relief this Court will not reverse such a denial absent a finding that the trial court's decision was clearly erroneous." Kirksey v. State, 728 So.2d 565, 567(¶ 8) (Miss.1999) (citing State v. Tokman, 564 So.2d 1339, 1341 (Miss.1990)). However, when issues of law are raised, the proper *91 standard of review is de novo. Brown v. State, 731 So.2d 595, 598(¶ 6) (Miss.1999).

I. Whether the trial court was in error when it summarily dismissed Owens's petition for post-conviction relief without holding an evidentiary hearing.
¶ 19. Owens's argument on this issue is that he relied on the State's recommendation of a twenty-five-year sentence when he agreed to plead guilty to both counts. He claims that at no point during the proceedings did the trial court advise him that the court did not have to follow the State's sentencing recommendation and could sentence him as the court saw fit.
¶ 20. The State argues that this issue was not raised in the trial court, and it is, therefore, procedurally barred. However, an examination of Owens's February 2, 2006, post-conviction relief motion shows that he argued this issue in the trial court. Therefore, we find the State's argument is without merit.
¶ 21. Our examination of the record finds Owens's argument to be without foundation. First and foremost, he was made aware that the trial judge was not bound by the State's recommendation because it was clearly stated in his petition to plead guilty. Owens's petition to enter a guilty plea reads as follows:
I know that the sentence is up to the Court; that the Court is not required to carry out any understanding made by me and my attorney with the District Attorney; and further, that the Court is not required to follow the recommendation of the District Attorney; and further, that the Court is not required to follow the recommendation of the District Attorney, if any.
Then, on a blank line directly following, was written by hand, "Sentence is deferred pending PSI and sentencing hearing." Owens signed his name at the bottom of the petition.
¶ 22. Before accepting Owens's guilty plea, the trial judge asked him if he had "read every word in every sentence in every paragraph above the place for your signature," of the petition to plead guilty, to which Owens replied, "Yes, sir." The trial judge asked Owens if he understood what he read, and again Owens replied, "Yes, sir." Then the trial judge asked Owens if his attorney had gone over the plea petition with him, and Owens replied that his attorney "clarified everything satisfactory." The supreme court has consistently stated that a trial court may place great emphasis upon statements made by criminal defendants under oath in open court during their guilty pleas and sentencing. Holt v. State, 650 So.2d 1267, 1270 (Miss.1994). Our Court has applied this rule and stated that in considering a post-conviction relief motion, a trial judge is "entitled to rely upon the sworn statements made by defendants during their plea qualification hearings." Graves v. State, 872 So.2d 760, 762(¶ 10) (Miss.Ct. App.2004). Owens told the trial court under oath that he had read and understood every word of his petition to plead guilty and also that his attorney had explained the petition's contents. Clearly stated in the petition is an acknowledgment made under oath that Owens was aware that the trial court was not bound to follow any sentencing recommendation made by the prosecution and that sentencing was completely at the discretion of the court. In deciding this issue, we must also apply the long-standing rules that sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute. Reynolds v. State, 585 So.2d 753, 756 (Miss.1991) (citing Reed v. State, 536 So.2d 1336, 1339 (Miss.1988)).
*92 ¶ 23. Owens was aware that the trial court was not bound to follow the State's recommendation regarding his sentence. Clearly, the form he signed and swore under oath stated that he understood that the sentence he would be given was completely left up to the trial court, which was under no requirement to follow the State's recommended sentence. Owens's sentence of thirty years on the armed robbery charge and ten years on the aggravated assault charge, to run consecutively, was within statutory guidelines.[1] The trial court explained that he was giving the upper limits of the sentences because of the heinous nature of Owens's crime against Carter, which consisted of beating him in the head with a claw hammer, pistol whipping him, shooting him in the chest, taping him after inflicting the injuries to prevent his escape, and then leaving him for dead. We find no error in the trial court's actions and, therefore, find this alleged error to be without merit.

II. Whether the trial court was in error when it sentenced Owens to a term that exceeded the State's recommended sentence which Owens detrimentally relied upon prior to the entry of his plea.
¶ 24. This alleged error is basically a reiteration of Owens's first issue, except that he has added an allegation that he detrimentally relied upon the prosecution's recommendation of a twenty-five-year sentence when he agreed to enter a guilty plea.
¶ 25. Following the entry of his guilty plea, Owens asked that his sentencing be delayed so that a presentence report could be made and so his family from South Carolina could appear and offer statements to the trial judge.
¶ 26. A month later, the sentencing hearing was held. It opened with a discussion of the victim's injuries, which the State described as a broken bone in Carter's face from being pistol whipped by Owens; cracked cheek and skull bones from being beaten by Owens with a claw hammer; and a gunshot wound to the chest caused by Owens shooting Carter with a pistol. As a result of Owens's actions, the prosecutor said that Carter can only speak in a whisper and has no feeling on the right side of his face. Also, the prosecution pointed out that the bullet which Owens fired at Carter is still lodged in his heart. The State offered that it was a miracle that Carter lived, despite these grievous injuries. It was noted that Carter suffered hospital bills of at least $31,000 as of the date of the sentencing, and further hospitalization might be necessary due to the bullet's remaining lodged in Carter's heart. The State also read from the victim's statement that Carter feared for his life if Owens were ever freed. During the allocution, six members of Owens's family and a ministerall from South Carolinaspoke on Owens's behalf. Some brought out the fact that Owens had completed several courses of Bible study while imprisoned, and he was a changed person who wants to make a difference in other people's lives. Owens also spoke on his own behalf, expressing remorse for his actions.
*93 ¶ 27. The trial judge then discussed the factors he considered in sentencing Owens. He said that Owens's armed robbery of Carter was one of the worst armed robberies he had ever seen. "But for the hand of the Lord[,] the man would be dead and you would be facing the death penalty because if he died and you committed an underlying felony of robbery then you would be looking at the death penalty in this case." The trial judge said that Owens's actions "cried out" for the upper limits of the possible sentence. The trial judge said he considered, as mitigation, the fact that Owens admitted his actions, pleaded guilty, and expressed his remorse for his actions. Then the trial judge discussed his sentencing options.
THE COURT: As [the district attorney] pointed out, and the Court is well aware of, the upper limits and the highest limits that could be imposed is a day less than your natural life expectancy. Generally a life expectancy for a white male at this time is in the vicinity of 77 years of age. So I think at the time of the presentence you were 25. You're how old now?
MR. OWENS: I'm 24, Your Honor.
THE COURT: Twenty-four. So to get to 75 would be 51 years with the Department of Corrections.
I think in view of the fact that you have not required Mr. Carter to relive the agony and pain and mental suffering of having to receive a subpoena and telling him the case is set for trial and that the person charged with the crime for some unmindful reason given the proof and strength of this case which is enormous. We've been over that, you understand the proof is enormous, in addition to your confession. There are some people that do that, and they subject the person who's been victimized to be victimized a second time by waiting for the court system to finally bring closure to what's happened to them, and then hopefully turn to the Lord and be able to live the balance of their lives as best as they can with a fractured skull, a broken cheek bone, not being able to cheer, only being able to whisper, not being able to sing, maybe not even be able to whistle, and to try how he can be able to look in the mirror and not, and you know, thank the Lord, this is day the Lord has made. Let us rejoice and be glad in it. He has to try to do that. That's an unbearable factor in this whole scenario. Like you said if you could reverse it but you can't.
¶ 28. The trial court said that the fact Owens did "the honorable thing" and admitted his wrongdoing and pleaded guilty removed from the court's consideration a fifty-year sentence. The trial judge acknowledged the twenty-five-year sentence, which the State recommended was in "the mid-range" of possible sentencing, but he told Owens that he had to be consistent in his sentencing. The trial judge said because of the extreme nature of his crimes, Owens should be sentenced in the upper limits of the range. The trial court then gave Owens a sentence of thirty years for the armed robbery count and ten years for the aggravated assault count, with the sentences to run consecutively for a total of forty years in the custody of the MDOC.
¶ 29. In support of his argument, Owens quotes portions of the trial court's discussion with Owens, his attorney, and the assistant district attorney, which occurred during the hearing on Owens's attorney's motion to withdraw as counsel. The quotations are selectively made and quoted out of context by Owens. We have reviewed the complete transcription of what was said at the motion hearing and find nothing in the trial judge's remarks that could have led Owens to believe that the judge was going to follow the State's recommended sentence. When read in the proper context, the trial court's remarks *94 concern the problems that lawyers face when appointed to represent a client. We have reviewed the full record and find that the court's comments could not have been interpreted as showing Owens's reliance on the State's recommendation of a sentence. We find this issue without merit.

III. Whether the trial court was in error when it found that Owens's plea was freely and voluntarily given.
¶ 30. Owens's argument on this point is that his guilty plea was not intelligently, voluntarily, and freely given because the trial court sentenced him to a term of years in excess of the State's recommendation.
¶ 31. A guilty plea must be voluntarily, intelligently, and knowingly entered in order to be binding upon a criminal defendant. Spry v. State, 796 So.2d 229, 231(¶ 6) (Miss.2001). To determine this, an appellate court must find that "the defendant knows what the elements are of the charge against him including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence might be because of his plea." Wilson v. State, 577 So.2d 394, 397 (Miss.1991) (citing Schmitt v. State, 560 So.2d 148, 154 (Miss.1990)). The petitioner carries the burden of proof to demonstrate his plea was not voluntary, intelligently, and knowingly given. Hannah v. State, 943 So.2d 20, 25(¶ 11) (Miss. 2006) (citing Gardner v. State, 531 So.2d 805, 810 (Miss.1988)).
¶ 32. The transcript from Owens's plea hearing clearly shows that he testified under oath that he had read and understood his guilty plea petition, which stated in pertinent part that the trial judge was not required to follow the sentencing recommendation of the State and could sentence Owens to any term within the statutory limits. The transcript also shows that Owens was told the maximum and minimum sentences that he could receive for the crimes with which he was charged. Owens affirmed to the trial judge that he was satisfied with the advice and counsel of his attorney. Importantly, the record shows that Owens was informed of his constitutional rights that he was waiving by pleading guilty. Owens told the trial court that he understood that he was waiving those rights. Owens signed the petition to plead guilty and told the trial court that he was in fact guilty of the two charges. We find that Owens has failed to carry his burden of proof to show that his plea was not voluntarily, intelligently, and knowingly given. This issue is without merit.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] Owens pleaded guilty to aggravated assault pursuant to Mississippi Code Annotated section 97-3-7(2) (Rev.2000). The punishment for aggravated assault under this section is not more than one year in the county jail or not more than twenty years in the penitentiary. He also pleaded guilty to armed robbery under Mississippi Code Annotated section 97-3-79 (Rev.2000), which provides in cases where a jury fails to fix the penalty to life in the penitentiary, the court shall fix the penalty to any term, but not less than three years. However, only a jury can sentence a convicted armed robber to life in prison. Id.; see Calhoun v. State, 881 So.2d 308, 312(¶ 15) (Miss.Ct.App.2004).