MAXWELL, JUSTICE, FOR THE COURT:
 

 ¶1. Shannon Craig Parker appeals his aggravated-assault conviction and enhanced sentence. We assigned his appeal to the Court of Appeals, which affirmed. However, the appellate court was divided on one of the three issues Parker raised-whether the trial judge abused his discretion in denying Parker's request for a mental evaluation to pursue a possible insanity defense. We granted Parker's petition for writ of certiorari to review this issue.
 

 ¶2. After review, we hold the trial judge did not abuse his discretion when he denied Parker's pro se motion for a mental evaluation. Although given the opportunity to do so, Parker presented no concrete reason establishing the need for a mental evaluation to assist in the pursuit of a viable insanity defense. Instead, Parker offered only unsupported assertions of diminished capacity-a defense not recognized by Mississippi law. We thus affirm.
 

 Background Facts and Procedural History
 

 I. Shooting
 

 ¶3. Eric and Edna Burkett were standing outside their home in Hattiesburg, Mississippi, when a white pickup truck stopped in front of them. The driver got out, and the Burketts asked if he needed help. The man mumbled something, grabbed a rifle, and shot Eric, wounding him. The man also fired shots at Edna but missed. Soon after, the police found the white truck in a nearby ditch. Its tires were still spinning. The driver, later identified as Parker, was in the truck. He was arrested and later confirmed by the Burketts as the man who attacked them.
 

 ¶4. Parker appeared to be under the influence. So police waited until the next day to interview him.
 
 [1]
 
 Parker, through a written statement, told police "I don't no [sic] victim. Don't even no [sic] victim. All I remember is sitting spinning." At the interviewing officer's recommendation, Parker underwent a mental evaluation. The evaluation was performed by a licensed professional counselor. Parker told the counselor that he had previously been treated for anxiety and depression. The counselor concluded that Parker "was verbal and responsive" and that "[h]is thought processes were rational."
 

 II. Rejected Plea
 

 ¶5. Although indicted on two counts of assault, the State elected to proceed only on the aggravated assault against Eric, with a five-year sentencing enhancement for using a firearm.
 
 See
 

 Miss. Code Ann. § 97-3-7
 
 (2)(a) (Rev. 2014) (aggravated assault);
 
 Miss. Code Ann. § 97-37-37
 
 (1) (Rev. 2014) (firearm enhancement). A week before the scheduled trial, Parker planned to plead guilty. But at the plea hearing, Parker claimed he had no recollection of the crime. And he maintained he could not verify the State's recitation of the facts. Under the circumstances, the trial judge determined he could not accept Parker's plea. At that point, the judge turned to pretrial matters.
 

 ¶6. One of these matters was defense counsel's prior indication that she did not intend to call an expert. At this point, Parker's counsel clarified that "this is where Mr. Parker and I disagree on the strategies of this trial." While Parker wanted a mental evaluation, counsel advised him he did not fall within "the parameters that the law requires in order to request a mental evaluation." Despite the time limit to make such a request having already passed, the trial judge permitted Parker to file a motion for a mental evaluation pro se. The judge also set the matter for a hearing the following Monday. The judge advised Parker that he may need to bring witnesses.
 

 III. Motion for Mental Evaluation
 

 ¶7. The hearing began with Parker's counsel confirming she and her co-counsel did not believe they could, as a matter of professional ethics, present Parker's motion. Specifically, counsel stated that, "I don't believe under
 
 M'Naghten
 
 that I would be able to present that motion." Parker then argued his motion pro se. He first attempted to rely on what he had written in his unsworn motion. The motion cited what the Burketts and arresting officers had allegedly said about this behavior the night he shot Eric. But the trial judge instructed Parker that he could not cite what other people allegedly said outside the courtroom as evidence. The trial judge then asked a series of probing questions about Parker's mental-health and prescription-drug history. Parker recollected he had suffered from anxiety and depression and once attempted suicide. At the end of the hearing, the trial judge concluded:
 

 Basically based on what the [trial] Court has to look at in terms of the treatment for anxiety and depression and the unfortunate event with attempting to commit suicide one time, there's nothing in anything, that information or the demeanor I've seen, the motions that have been filed, the court file itself, my interactions
 with Mr. Parker to lead me to believe that there's any rational basis for appointing a psychiatrist or psychologist to examine him for the purpose of determining either his competency or sanity.
 

 ¶8. The case proceeded to trial three days later. The jury found Parker guilty of aggravated assault and using a firearm during the commission of his crime. The judge sentenced Parker to twenty years for the assault conviction, with an additional five years for the firearm enhancement.
 

 IV. Appeal
 

 ¶9. This Court assigned Parker's appeal to the Court of Appeals, which affirmed. Parker presented three issues on appeal: (1) the trial judge erred in allowing the State's firearm expert to testify; (2) the trial judge abused his discretion in denying Parker's motion for a mental evaluation; and (3) the firearm enhancement violated the constitutional prohibition against double jeopardy. While the appellate court unanimously agreed the first and third issues presented no reversible error, the court was equally divided on the second issue. Based on this split, we granted Parker's petition for certiorari review. Although Parker reasserted all three appellate issues in his petition, we limit our review to the issue of Parker's request for a mental evaluation.
 
 See
 

 Guice v. State
 
 ,
 
 952 So.2d 129
 
 , 133 (Miss. 2007) (recognizing this Court's "unquestionabl[e]" authority to limit the question on certiorari review).
 

 Discussion
 

 I. Competency versus Insanity
 

 ¶10. In his petition, Parker echoes the criticism made in the dissenting Court of Appeals opinion that "the trial court was focused on Parker's ability to stand trial rather than his sanity at the time of the incident."
 
 Parker v. State
 
 , No. 2016-KA-01502-COA, --- So.3d ----, ----,
 
 2018 WL 1602585
 
 , at *9 (Miss. Ct. App. Apr. 3, 2018) (Tindell, J., dissenting). The dissent to this opinion lodges the same complaint.
 

 ¶11. We recognize, without question, that competency and sanity are two distinct concepts.
 
 Sanders v. State
 
 ,
 
 9 So.3d 1132
 
 , 1137 (Miss. 2009). Competency to stand trial is measured at the time of trial. And its standard is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'has a rational as well as factual understanding of the proceedings against him.' "
 
 Martin v. State
 
 ,
 
 871 So.2d 693
 
 , 698 (Miss. 2004) (quoting
 
 Dusky v. United States
 
 ,
 
 362 U.S. 402
 
 ,
 
 80 S.Ct. 788
 
 ,
 
 4 L.Ed. 2d 824
 
 (1960) ). By contrast, insanity-or, more precisely, a defendant's affirmative defense of not guilty by reason of insanity-is measured at the time of the criminal offense. And its standard is the "
 
 M'Naghten
 
 rule."
 
 Davis v. State
 
 ,
 
 551 So.2d 165
 
 , 173 (Miss. 1989). Under this rule:
 

 To establish a defense on the ground of insanity, it must be clearly proved that at the time of committing of the act the accused was laboring under such defect of reason from disease of the mind as (1) not to know the nature and quality of the act he was doing, or (2) if he did know it, that he did not know that what he was doing was wrong.
 

 Id.
 

 (citing
 
 Hunter v. State
 
 ,
 
 489 So.2d 1086
 
 , 1090 (Miss. 1986) ;
 
 Laney v. State
 
 ,
 
 486 So.2d 1242
 
 , 1245 (Miss. 1986) ).
 

 ¶12. First, we point out that just because Parker advanced his motion for mental evaluation on his claim that he may have been legally insane when he shot Eric does not put the trial court in error for also making an on-the-record ruling on Parker's competency. In fact, then-applicable Uniform Rule of Circuit and County Court Practice 9.06 mandated the trial judge
 
 sua
 

 sponte
 
 order a mental evaluation and conduct a competency hearing if the judge had "reasonable ground to believe that [Parker was] incompetent to stand trial[.]"
 
 [2]
 
 Parker's actions leading up to the motion hearing at least raised the specter of his potential inability to consult with his court-appointed attorneys or understand the proceedings against him.
 
 [3]
 
 So we certainly do not fault the trial court for using the hearing to ensure no reasonable ground existed to believe Parker was incompetent to stand trial and face a jury seventy-two hours later.
 

 ¶13. Further, that the court assessed Parker's competency does not mean it failed to consider his potential insanity defense as a basis for granting a mental evaluation. The record shows the court permitted Parker to file his pro se motion out of time,
 
 [4]
 
 despite Parker's counsel informing the court she could not ethically file a motion for mental evaluation because she did not believe Parker met the conditions to receive one. The court was in fact cautious and set the motion for a pretrial hearing, telling Parker the court "intend[ed] to take testimony" and advising him he may have to call witnesses in support.
 

 ¶14. At the hearing, when Parker directed the court's attention to his claim that he was insane at the time of the crime, the court patiently responded, "All right, well, I'm here, and I'll sit here as long as we need to sit here to let you offer me proof that you have a mental problem or disease that would-that had some effect on why you don't remember what happened." Still, Parker failed to produce any proof. And the trial judge again reassured him, "I'll let you go and say whatever you wanted to say, and then I'm going to go through this and do what I want to do, and you be thinking, if there's
 
 any other proof you want me to consider, any medical records, any witnesses, anything of that nature
 
 , I'll sit here ... till [five o'clock]. If we need to reconvene in the morning, we'll do that." (Emphasis added.) Despite the opportunity, guidance, and reassurance by the trial court, Parker made no attempt to call any witness. Nor did he attempt to submit any records.
 

 ¶15. After Parker failed to present any proof, the trial judge expressly concluded:
 

 [T]here's nothing in anything, that information or the demeanor I've seen, the motions that have been filed, the court file itself, my interactions with Mr. Parker to lead me to believe that there's
 any rational basis for appointing a psychiatrist or psychologist to examine him for the purpose of determining either his competency
 
 or sanity
 
 ."
 

 (Emphasis added.) Our review of the record demonstrates the trial judge thoroughly considered Parker's request for a mental evaluation to assist a potential insanity defense.
 

 II. Unsubstantiated Assertions
 

 ¶16. As to the merits of this request, we agree with the Court of Appeals plurality that the trial court did not abuse its discretion when it denied Parker's motion for a mental evaluation.
 

 ¶17. "This Court weighs on a case by case basis whether the denial of expert assistance for an accused is prejudicial to the assurance of a fair trial ...."
 
 Johnson v. State
 
 ,
 
 529 So.2d 577
 
 , 590 (Miss. 1988). We "will grant relief only where the accused demonstrates that the trial court's abuse of discretion is so egregious as to deny him due process and where his trial was thereby rendered fundamentally unfair."
 

 Id.
 

 ¶18. "[W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist" who will examine and assist him.
 
 Ake v. Oklahoma
 
 ,
 
 470 U.S. 68
 
 , 83,
 
 105 S.Ct. 1087
 
 , 1096,
 
 84 L.Ed. 2d 53
 
 (1985). "Of course a defendant must come forth with concrete reasons, not unsubstantiated assertions that assistance would be beneficial."
 
 Harrison v. State
 
 ,
 
 635 So.2d 894
 
 , 901 (Miss. 1994) (citing
 
 Butler v. State
 
 ,
 
 608 So.2d 314
 
 , 321 (Miss. 1992) ;
 
 Hansen v. State
 
 ,
 
 592 So.2d 114
 
 , 125 (Miss. 1991) ;
 
 Griffin v. State
 
 ,
 
 557 So.2d 542
 
 (Miss. 1990) ).
 

 ¶19. Parker relied exclusively on (1) his assertion he did not know the victim and could not remember anything about the night of the assault and (2) his own personal recollection about his mental-health history. This history included his taking prescription drugs for anxiety and depression and a suicide attempt three years earlier. But, as the Court of Appeals plurality aptly put it, Parker's history of treatment for anxiety and depression "has no apparent relevance to his ability to know right from wrong at the time of the offense."
 
 Parker
 
 , --- So.3d at ----,
 
 2018 WL 1602585
 
 , at *6.
 
 Cf.
 

 Sanders v. State
 
 ,
 
 63 So.3d 497
 
 , 506 (Miss. 2011) ("Just because a person is schizophrenic does not mean that person is
 
 M'Naghten
 
 insane." (citing
 
 Laney v. State
 
 ,
 
 486 So.2d 1242
 
 , 1245 (Miss. 1986) )). Nor does Parker's testimony that he does not remember shooting Eric establish
 
 M'Naghten
 
 insanity. Not being able to remember is not the same thing as not being able to distinguish right from wrong.
 
 See, e.g.
 
 ,
 
 United States v. Holsey
 
 ,
 
 995 F.2d 960
 
 , 963 (10th Cir. 1993) (holding that the defendant's testimony that he "had 'blacked out' and did not remember robbing the bank" did not amount to evidence that the defendant suffered from a mental defect rendering the defendant "unable to appreciate the nature and quality or the wrongfulness of his acts");
 
 Williams v. State
 
 ,
 
 237 Ga. 399
 
 ,
 
 228 S.E.2d 806
 
 , 807 (1976) ("This testimony by appellant, that he does not remember what happened, does not require a charge on insanity.");
 
 Jackson v. State
 
 ,
 
 149 Ga.App. 253
 
 ,
 
 253 S.E.2d 874
 
 , 877 (1979) ("Evidence that the defendant does not remember or was in a 'blanked out' state of mind during the commission of the acts charged is insufficient to raise the issue of insanity." (citations omitted));
 
 Sparkman v. State
 
 ,
 
 469 S.W.2d 692
 
 , 696-97 (Tenn. Crim. App. 1970) ("Insanity and amnesia are distinct conditions, even though amnesia sometimes is an incident
 of insanity. Insanity is incapacity to discriminate between right and wrong, while amnesia is simply the inability to remember.");
 
 Jeffley v. State
 
 ,
 
 938 S.W.2d 514
 
 , 515 (Tex. Ct. App. 1997) ("Loss of memory, however, is insufficient to show insanity.");
 
 Ex parte Saylee
 
 , No. 03-18-00124-CR,
 
 2019 WL 1413043
 
 , at *6 (Tex. Ct. App. Mar. 29, 2019) ("Not remembering conduct is distinct from not knowing that conduct is wrong and does not entitle an accused to the insanity defense."). This is especially so when the memory loss may be attributable to voluntary intoxication or drug use.
 
 [5]
 

 See
 

 Smith v. State
 
 ,
 
 445 So.2d 227
 
 , 231 (Miss. 1984) ("[I]f a person, when sober, is capable of distinguishing right and wrong and voluntarily intoxicates or drugs himself to the extent that he does not know or understand his actions, e.g., steals, robs, or murders, he is responsible and he may be convicted and sentenced for the crime." (citing
 
 McDaniel v. State
 
 ,
 
 356 So.2d 1151
 
 , 1161 (Miss. 1978) (Sugg, J., specially concurring)));
 
 Patterson v. State
 
 ,
 
 127 So.3d 1124
 
 , 1131 (Miss. Ct. App. 2013) (holding that not being able to remember committing the crime due to voluntary intoxication is not a viable insanity defense).
 

 ¶20. At best, Parker's testimony suggested "diminished capacity"-a defense that is not recognized under Mississippi law.
 
 Cannaday v. State
 
 ,
 
 455 So.2d 713
 
 , 720 (Miss. 1984) ;
 
 Patterson
 
 ,
 
 127 So.3d at 1131
 
 . When it come to
 
 insanity
 
 , however, we agree with the Court of Appeals plurality that Parker failed to present "any concrete reason" establishing a mental evaluation was necessary or that Parker had a viable insanity defense.
 
 Parker
 
 , --- So.3d at ----,
 
 2018 WL 1602585
 
 , at *6. Thus, "given the broad discretion afforded to trial courts in determining whether to order a mental evaluation[,]" we find no reversible error.
 
 Harden v. State
 
 ,
 
 59 So.3d 594
 
 , 603 (Miss. 2011).
 

 III. Hearsay
 

 ¶21. As to Parker's other statements-which the dissent suggests should have been considered competent evidence in support of Parker's motion-the trial judge did not abuse his discretion in excluding them as hearsay. Again, Parker did not call any witnesses. Instead, he merely offered an unsworn pleading as support, which contained what he alleged were statements from others. The judge explained that Parker could not offer out-of-court statements from
 
 others
 
 about how he was acting that night to
 
 prove
 
 in fact how he acted. As the trial court correctly described it, what Parker was attempting to offer was textbook hearsay. Parker wanted to offer statements by the arresting officers and victims, made out of court, to prove the truth of what they had asserted-namely, that Parker appeared to be "belligerent," that Parker "appeared to be under the influence of some type of drug or alcohol," and that Parker had been "talking in a strange language" and "mumbling."
 
 See
 
 Miss. R. Evid. 801(c) (" 'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").
 

 ¶22. The fact Parker himself supposedly could not recollect his behavior or state of mind when he shot Eric does not change the fundamental evidentiary rule that he could not testify about what
 
 others
 
 witnessed. Of course, Parker could have
 called the arresting officers and victims to testify about what Parker had said that night to prove Parker's state of mind.
 
 [6]
 
 If he had done so,
 
 their
 
 testimony would not be hearsay, because it would have been offered not to prove what Parker said was true but instead to prove Parker's incoherence. But, though he was given the opportunity to do so, that is not what Parker did. Instead, Parker tried to shoehorn in unsworn out-of-court statements from others aimed at proving what was asserted about Parker's behavior was in fact true. Again, with respect for the dissent, this is hearsay.
 

 ¶23. The hearsay-exception cases the dissent cites are clearly distinguishable. For example, in
 
 Peterson v. State
 
 ,
 
 671 So.2d 647
 
 , 657 (Miss. 1996),
 
 [7]
 
 a sexual-battery case, the defendant tried to introduce a statement his victim made to him the night of the assault that earlier that evening someone had called her a "slut and a whore." The defendant offered this evidence "as relevant to [his] state of mind on the night of the offense."
 

 Id.
 

 at 651
 
 . More specifically, he offered the evidence to show what he "could expect regarding sexual relations."
 

 Id.
 

 at 657
 
 . This Court affirmed the irrelevance and inadmissibility of this statement in a sexual-battery case. But we noted the out-of-court statement was not hearsay because it was "offered to prove the defendant's state of mind,
 
 rather than
 
 the truth of its assertions."
 

 Id.
 

 at 657
 
 (emphasis added). In other words, the statement was offered to show the defendant's claimed belief that the victim was promiscuous, not that she was in fact and truth a "slut and a whore."
 
 [8]
 

 Id.
 

 ¶24. Here, by sharp contrast, Parker offered the out-of-court statements in an effort to prove he
 
 truly
 
 was acting "belligerent," he
 
 in truth
 
 "appeared to be under the influence of some type of drug or alcohol," and he was
 
 in fact
 
 "talking in a strange language" and "mumbling" the night he shot Eric. So the statements
 
 were
 
 inadmissible hearsay.
 
 See
 
 Miss. R. Evid. 801(c), 802. Thus, we find the trial court did not abuse its discretion in refusing to consider this incompetent evidence when making the discretionary decision to deny Parker's unsupported motion for a mental evaluation.
 

 Conclusion
 

 ¶25. On the limited issue of the trial judge's denial of Parker's motion for a mental evaluation, we find no reversible error. We therefore affirm the judgments of the Forrest County Circuit Court and the Court of Appeals.
 

 ¶26.
 
 AFFIRMED.
 

 RANDOLPH, C.J., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J. GRIFFIS, J., NOT PARTICIPATING.
 

 Parker voluntarily waived his
 
 Miranda
 
 rights.
 
 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 ,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed. 2d 694
 
 (1966) (requiring that, prior to a custodial interrogation, the person being interviewed be warned that he has a right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed).
 

 Cf.
 

 House v. State
 
 ,
 
 754 So.2d 1147
 
 , 1151 (Miss. 1999) ("[T]rial courts are [constitutionally] obligated to conduct a competency hearing, either on the defendant's motion or sua sponte, if there is sufficient doubt about a defendant's competence." (citing
 
 Drope v. Missouri
 
 ,
 
 420 U.S. 162
 
 , 180,
 
 95 S.Ct. 896
 
 , 908,
 
 43 L.Ed. 2d 103
 
 (1975) ;
 
 Pate v. Robinson
 
 ,
 
 383 U.S. 375
 
 , 378,
 
 86 S.Ct. 836
 
 , 838,
 
 15 L.Ed. 2d 815
 
 (1966) )).
 

 Parker had filed numerous pro se motions, including a "Motion to Be and Allow Shannon Craig Parker to Be Co-counsel Beside One Candance Rickmon Public Defender," "Motion of Release And/or Fire Public Defender Filed by Defendant," and "Motion for Preliminary Injunction/Transfer." And at the prior hearing, Parker had openly disagreed with his appointed counsel's assessment of Parker's potential insanity defense.
 

 Under the authority granted in then-applicable Rule 8.02, the trial court had set a due date of August 30, 2016, to file a motion for mental examination.
 
 See
 
 URCCC 8.02. Under then-applicable Rule 9.07, this was also the deadline to inform the State and the court that Parker intended to rely on an insanity defense.
 
 See
 
 URCCC 9.07. Parker did not inform the court he had wanted to file his motion for mental evaluation based on a potential insanity defense until two weeks later, on September 15, 2016, exactly one week before the scheduled trial.
 

 Albeit months after the crime, Parker testified under oath that, if he in fact did what the State accused him of doing, then the judge should punish him to the full extent of the law-indicating that, when not under the influence of any substance, he knew right from wrong.
 

 We note the Burketts and arresting officers did testify at trial. But their later in-court testimony does not change the fact that the statements cited in the pretrial motion were hearsay.
 

 As the dissent acknowledges, Peterson has been superseded by rule on other grounds as recognized in
 
 Caston v. State
 
 ,
 
 949 So.2d 852
 
 , 855-56 (Miss. Ct. App. 2007).
 

 The same is true for
 
 Eselin-Bullock & Associates Insurance Agency v. National General Insurance Co.
 
 ,
 
 604 So.2d 236
 
 , 242 (Miss. 1992), in which this Court explicitly held that there was "no issue about the truth of the matter asserted."
 
 Eselin-Bullock
 
 was a tortious-interference-with-business-relations case between an insurance agency, Eselin-Bullock, and the insurer it represented. Following Hurricane Elena in 1985, the insurer decided it was cost-prohibitive to reinsure along the Mississippi Gulf Coast. The insurer sent letters directly to clients notifying them that their "policies were being cancelled because [the agency] no longer represented [the insured]."
 

 Id.
 

 at 239
 
 . At trial, one of the agents tried to testify about the phone calls he received from upset clients. He explained the clients blamed the agency about the cancellations of their policies and thought, based on the wording on the letters, that the agency was going out of business. The trial court sustained the insurer's objection on hearsay grounds. This Court reversed, holding the out-of-court statements by clients were not hearsay because "[t]hese statements were not offered to prove that the clients were truly upset, that the clients in truth blamed Eselin-Bullock for their cancellations, or that the clients in truth believed that Eselin-Bullock was going out of business."
 

 Id.
 

 at 242
 
 . Instead, "[t]hese statements were offered simply to prove that such statements were made by Eselin-Bullock clients in response to cancellation notices."
 

 As to the three non-Mississippi cases the dissent cites, they too are distinguishable because the out-of-court statements were not being offered to prove the truth of the matter asserted.
 
 United States v. Detrich
 
 ,
 
 865 F.2d 17
 
 (2d Cir. 1988) was a federal drug-trafficking case in which the defendant claimed he had brought a suit back from India as a favor for a friend whose cousin was getting married. He was met at the airport by the Drug Enforcement Administration, which found heroin hidden in the shoulder pads of the suit. The Second Circuit held the defendant should have been allowed to introduce the cousin's out-of-court statement to the DEA that he was getting married. "Without regard to the truth of [the cousin's] marriage plans," the statement was circumstantial evidence of the defendant's state of mind and his claim he thought he was performing an innocent a favor.
 

 Id.
 

 at 21
 
 .
 

 Lambert v. State
 
 ,
 
 888 P.2d 494
 
 (Okla. Crim. App. 1994) was a death-penalty appeal in which the defendant argued the State's expert who performed the competency evaluation should not have been allowed to testify that he (the expert) relied, in part, on conversations with an accomplice. The Oklahoma Court of Criminal Appeals rejected this argument because there was "no assertion that the information related by [the expert] was offered to prove the truth of the matter asserted."
 

 Id.
 

 at 501
 
 . Rather, the accomplice's statement "was used to evaluate the [defendant's] state of mind, and to show his ability to plan."
 

 Id.
 

 Finally,
 
 State v. Crafts
 
 ,
 
 226 Conn. 237
 
 ,
 
 627 A.2d 877
 
 (1993) was a gruesome murder case in which the state's theory was that the defendant murdered his wife upon learning she planned to divorce him. The state introduced five witnesses who testified that the victim had told them that, if something happened to her, they should not believe that it was an accident. In rejecting the defendant's hearsay claim, the Supreme Court of Connecticut noted that "[a]n out-of-court statement is hearsay ...
 
 only
 
 if it is offered to prove the truth of the matter asserted in the statement."
 

 Id.
 

 at 886
 
 (emphasis added). And in that case, "because the state offered the evidence to establish only the victim's state of mind, the statements were not hearsay."
 

 Id.