# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00176-COA

**DWAYNA PORCHE HICKERSON A/K/A**          **APPELLANT**
**DWAYNA HICKERSON A/K/A DWANYA**
**HICKERSON**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/20/2021 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANDRE ROBERT BELANGER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 04/05/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     Dwayna Hickerson pled guilty to second-degree murder and robbery in the Jackson County Circuit Court. On July 20, 2017, the circuit court sentenced Hickerson to forty years in the custody of the Mississippi Department of Corrections (MDOC), with thirty-five years to serve without eligibility for parole and five years of post-release supervision (PRS) for the murder conviction. For the robbery conviction, the circuit court sentenced him to fifteen years, with eight to serve and five years of PRS. The sentences were to run consecutively. After obtaining new counsel, Hickerson filed a petition for post-conviction relief (PCR), arguing that he received ineffective assistance of counsel and that his guilty plea was

involuntary and invalid. The circuit court denied the PCR motion. Hickerson now appeals. Finding no error, we affirm the circuit court's denial.

## Statement of the Facts and Procedural History

¶2. Hickerson, twenty-one, met Dee "Princess" Whigham, twenty-five, on the dating application "Hot or Not." Hickerson and Whigham began communicating through "KIK," a messenger application. Whigham sent numerous pictures of herself to Hickerson, which included pictures of her face, breasts, and buttocks. Hickerson and Whigham eventually arranged a date for July 23, 2016. According to Hickerson's statement, he had been drinking before Whigham picked him up from Keesler Air Force Base (the base), where Hickerson was stationed. Ultimately, Hickerson and Whigham decided to go to a hotel to have sexual intercourse. Whigham performed fellatio on Hickerson in the car and at the hotel. She requested to have anal sex, which Hickerson obliged.

¶3. Shortly thereafter, Whigham told Hickerson that she was born a man and was taking steps to become a female. According to Hickerson, he believed Whigham to be born a woman and became enraged when she disclosed this information. He pulled out a knife and stabbed Whigham multiple times, killing her. According to his declaration of facts,[1] he stated that he "stabbed Whigham what [he] believed to be 1 or 2 times, which [he] later learned was many times more than that and that led to her death." Hickerson took Whigham's purse, which included her cell phone, and left the hotel. He walked to a gas station in his blood-stained shirt, and an elderly couple gave him a ride back to the base. The

---

[1] The declaration was not sworn.

2

following day, Hickerson burned his blood-stained shirt, Whigham's purse, her cell phone, and the knife in a burn pit.[2] Hickerson also cut his hair, got new glasses, and shaved.

¶4.     That same day, Whigham's body was discovered in the hotel room. The Jackson County Sheriff's Department (JCSD) recovered video surveillance from the hotel. In order to aid their investigation, the JCSD released still pictures from the video to the public. Hickerson was identified by one of the airmen on the base, who reported the information to the Commander. During their investigation, JCSD also secured video footage of Hickerson returning to the base in his blood-stained shirt. On July 25, 2016, law enforcement arrested and charged Hickerson with capital murder. According to Hickerson, he had no recollection of what occurred due to his diminished capacity because of a psychotic episode. Whigham's autopsy report stated that she was stabbed at least 190 times.

¶5.     On October 29, 2016, a Jackson County grand jury indicted Hickerson for capital murder in violation of Mississippi Code Annotated section 97-3-19(2)(e) (Rev. 2020) for willfully, unlawfully, and feloniously murdering Whigham while engaging in the commission of a felony (robbery) in violation of Mississippi Code Annotated section 97-3-73 (Rev. 2020). Hickerson's family hired Adrianne Rhoads-Wells (Rhoads) to represent him. He was arraigned on December 15, 2016, and pled not guilty to all the charges in the indictment. On December 20, 2016, the court scheduled a trial date for August 14, 2017. Because Hickerson faced the death penalty, the circuit court appointed Attorney Cameron McCormick to assist Rhoads. Additionally, William LaBarre, an attorney with the Office of the State Public

---

[2] Hickerson contradicted himself several times as to the location that he burned the crime scene items.

3

Defender (Capital Defense Division), entered his appearance. On April 24, 2017, the State withdrew the death penalty as a sentencing option. On July 5, 2017, the State extended a plea recommendation to Hickerson for second-degree murder and robbery. Two weeks later, the State extended a second plea recommendation to Hickerson for second-degree murder and robbery with a reduction in sentence for the robbery charge.

¶6. Hickerson filed a sworn plea petition and a plea agreement on July 20, 2017. In the petition, Hickerson acknowledged that he was not under the influence of any drugs at the time he signed the petition and that he was waiving his constitutional right to a trial. The petition stated that he understood the minimum and maximum sentence for each crime. The petition also provided that no one had threatened Hickerson to plead guilty or promised him anything if he pled guilty. Additionally, the petition provided that Hickerson was fully satisfied with his attorneys' service and that his attorneys acted in his best interest.

¶7. The circuit court held Hickerson's plea hearing on the same day that Hickerson filed his plea petition and agreement. Prior to accepting the plea, the court questioned Hickerson about the consequences of pleading guilty. The court asked Hickerson whether he understood that he was waiving his constitutional rights;[3] whether he was satisfied with his attorneys' representation; and whether he understood the nature of the charges against him. Hickerson answered those questions in the affirmative. Several of the victim's family members gave impact statements, which included the fact that they were devastated at the

---

[3] The court questioned Hickerson to confirm that he understood he was waiving his rights to the following: the right to a trial by jury, the right to be confronted by witnesses, the right to cross-examine the witnesses, the right to present witnesses, the right against self-incrimination, and any right to appeal to the Mississippi Supreme Court.

loss of Whigham, that Whigham was an RN nurse, and that although they did not approve of Whigham's lifestyle, they had accepted it.

¶8. The circuit court sentenced Hickerson to forty years in the custody of the MDOC, with thirty-five years to serve without eligibility for parole and five years of PRS, for the murder conviction and fifteen years, with eight to serve and five years of PRS, for the robbery conviction. The sentences were to run consecutively.

¶9. Hickerson hired Stephen Shapiro to file his PCR petition. In 2018, Shapiro requested that Rhoads send him a copy of Hickerson's entire case file twice on February 20, 2018, and on March 19, 2018. According to Shapiro, Rhoads never sent him the file. However, Rhoads said that he was asking for her prior notes, which she was not required to provide.

¶10. On July 20, 2020, exactly three years after Hickerson pled guilty, and after he hired yet another attorney, Hickerson finally filed a PCR petition and a memorandum. In the petition and memorandum, Hickerson argued that he received ineffective assistance of counsel from Rhoads.[4] He also claimed that he suffered prejudice as a result of Rhoads's deficient performance and that his guilty plea was not knowingly, intelligently, and voluntarily given. Hickerson claimed in his petition that Rhoads failed to advise him about the progress of the case and failed to discuss the legal issues in the case. Hickerson stated that he only had three days to consider the plea offer. He argued that the State and his counsel placed "enormous pressure" on him to make a "monumental decision within an extremely short time frame."

---

[4] Hickerson makes no ineffective-assistance-of-counsel claims against McCormick and LaBarre.

5

¶11. Furthermore, Hickerson argued that Rhoads failed to request a mental evaluation or even discuss his competence and mental state of mind when it was clear that he "had a break from reality or psychotic episode at the time of the incident," which continued "for the next couple of days." Finally, Hickerson argued that Rhoads failed to advise him that he did not commit a robbery but rather obstructed justice when he took and destroyed Whigham's purse and cell phone.[5]

¶12. Hickerson requested an evidentiary hearing and attached six exhibits to his PCR petition, including his declaration of facts, pictures Whigham sent to him, Shapiro's declaration of facts, emails from Shapiro to Rhoads, and a newspaper article detailing Hickerson's case and guilty plea. In his declaration of facts, Hickerson stated that Rhoads had only visited him four or five times while he was incarcerated, that she failed to discuss the legal issues of the case, and that she never advised him on the offenses of his case. Shapiro's emails to Rhoads show that he had requested a copy of her file on Hickerson. But

---

[5] Although Hickerson did not bring the issue on appeal, we note that the circuit court properly found that he had the intent to rob Whigham of her purse. "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery." Miss. Code Ann. § 97-3-73.

We are bound by the Mississippi Supreme Court's decision in *Batiste v. State,* 121 So. 3d 808 (Miss. 2013). In that case, the defendant argued that he had a defense to robbery because he took the victim's property after the victim's death with the intent to conceal the killing, not with the intent to permanently deprive the victim of his property. *Id*. at 831 (¶30). The Court stated that Batiste's argument was specious, finding that "[t]aking property to conceal a killing does not negate felonious intent." *Id*. When "Batiste admitted that he killed [the victim] and then removed items from his person or presence[,] [b]ecause [the victim] was dead, Batiste could not have intended to return the items to [him]." *Id*. Thus, the Supreme Court found that "the State [does] not have to prove that [a defendant] had the intent to rob prior to the killing, but that the killing and the robbery were part of a continuous chain of events and part of the res gestae." *Id*. at 834 (¶37).

Rhoads did not produce her file but instead left a voicemail, stating that she did not have a full copy of the file and that she was not sure if she could provide anything more than what was in the court record.

¶13. On August 7, 2020, the circuit court ordered the State to respond to Hickerson's PCR petition no later than September 4, 2020. Further, the circuit court ordered that an evidentiary hearing on Hickerson's petition would be held on September 24, 2020, if necessary. The State filed its response to Hickerson's petition on August 20, 2020. The State argued that Hickerson failed to present any evidence in support of his ineffective-assistance-of-counsel claim other than his own affidavit; thus, the State argued that the court should deny Hickerson's request for an evidentiary hearing. The State attached several exhibits to its response, including Hickerson's sentencing order, Rhoads's affidavit, the circuit court's order appointing McCormick, jail visitation slips, McCormick's affidavit, and LaBarre's affidavit. Both parties submitted copies of the transcript of Hickerson's plea hearing.

¶14. In her affidavit, Rhoads stated that she had lengthy and in-depth conversations with Hickerson regarding the case, that she did not observe any behavior that would indicate that a mental examination was necessary, and that Hickerson understood the consequences of his guilty plea. The visitation slips show that Rhoads met with Hickerson at least thirteen times over the course of the year prior to his plea. Furthermore, McCormick stated that he met with Hickerson numerous times and discussed all aspects of his case, that he did not observe any behavior that he believed required a mental evaluation, and that Hickerson understood

7

the details and consequences of his guilty plea. The visitation slips showed that on some occasions, Rhoads and McCormick visited Hickerson together. Thus, the State argued that Hickerson failed to meet the requirements to establish that he received ineffective assistance of counsel.

¶15. On January 20, 2021, the circuit court denied Hickerson's PCR petition from the record without convening an evidentiary hearing. The circuit court found that Hickerson failed to attach any sworn affidavits pursuant to statutory requirements to support his ineffective-assistance-of-counsel claim because neither his petition nor his declaration was sworn. Notwithstanding the failure to attach any sworn affidavits, the circuit court found that there was no merit to Hickerson's ineffective-assistance-of-counsel claim. Additionally, the circuit court found that Hickerson's guilty plea was "voluntarily and intelligently" given. The court also concluded that Hickerson committed a robbery by taking Whigham's purse because he had "intended to permanently deprive Whigham of her property."

¶16. Hickerson appealed the denial of his PCR petition on February 19, 2021, arguing that the circuit court erred in finding that his ineffective-assistance-of-counsel claim was meritless. Specifically, Hickerson argued that the circuit court erred in (1) failing to consider his and Shapiro's statements; (2) finding that Rhoads properly communicated with him throughout the case; and (3) finding that Rhoads fully investigated the case. Finding no error, we affirm the circuit court's order.

**Standard of Review**

¶17. "This Court reviews the denial or dismissal of a PCR [petition] for abuse of

8

discretion." *Wilson v. State*, 294 So. 3d 101, 103 (¶6) (Miss. Ct. App. 2020). "We will not reverse a trial court's [denial] of a [PCR] petition unless the trial court's decision was clearly erroneous." *Washington v. State*, 192 So. 3d 368, 370 (¶6) (Miss. Ct. App. 2016). Questions of law are reviewed de novo. *Id*.

**Discussion**

I. **Whether Hickerson's unsworn declaration was sufficient to support his claim of ineffective assistance of counsel.**

¶18. The circuit court found that Hickerson failed to fulfill the basic requirements for filing a PCR petition because he did not attach a proper affidavit to his PCR petition as required by law but only attached an unsworn declaration of facts. We agree.

¶19. Pursuant to Mississippi Code Annotated section 99-39-9(1)(d) (Rev. 2020), a PCR petition must contain "[a] separate statement of the specific facts which are within the personal knowledge of the petitioner and which shall be *sworn to by the petitioner*." (Emphasis added). Additionally, "[a] defendant's claims of ineffective assistance of counsel . . . must be supported by affidavits other than his own." *Mapp v. State*, 310 So. 3d 335, 339 (¶10) (Miss. Ct. App. 2021) (quoting *Moore v. State*, 248 So. 3d 845, 851 (¶15) (Miss. Ct. App. 2017)).

¶20. The Mississippi Supreme Court has stated that "[a]n affidavit is a sworn statement in writing made before an authorized official." *Russell v. State*, 849 So. 2d 95, 109 (¶28) (Miss. 2003). However, in this case, Hickerson attached two unsworn "Declaration of Facts" signed by himself and Shapiro. Hickerson failed to show good cause as to why the declarations were not sworn and why he did not provide any other affidavits. He merely stated that his

9

declaration was proper pursuant to the federal statute 28 U.S.C. §1746. However, the federal statute does not govern Mississippi's affidavit requirements. In *Thomas v. Greenwood Leflore Hospital*, 970 So. 2d 273, 277 (¶19) (Miss. Ct. App. 2007), we held that an affidavit must be sworn. We said, "without being sworn . . . it is merely a piece of paper with the word 'affidavit' as its title" and has no legal effect. *Id*. Thus, Hickerson failed to comply with the requirements for an ineffective-assistance-of-counsel claim by failing to attach any competent affidavits to his PCR petition as required by law. Notwithstanding Hickerson's failure to attach proper affidavits to his PCR petition, Hickerson's petition fails on the merits.

**II.    Whether Hickerson received ineffective assistance of counsel.**

¶21.    Hickerson argues in his PCR petition that he received ineffective assistance of counsel. Specifically, he argues that Rhoads failed to advise him about the progress of his case, failed to provide him with documentation regarding the case, failed to inform him of the legal issues and defenses, failed to tell him that the chance of his receiving the death penalty was minimal, and failed to regularly meet with him during her representation.

¶22.    The Uniform Post-Conviction Collateral Relief Act provides "an exclusive and uniform procedure for the collateral review of convictions and sentences." Miss. Code Ann. § 99-39-3(1) (Rev. 2020). This includes a post-appeal ineffective-assistance-of-counsel claim. "To succeed on an ineffective-assistance-of-counsel claim, the defendant must show that (1) his counsel's performance was deficient, and (2) that this deficiency prejudiced his defense." *Bell v. State*, 202 So. 3d 1239, 1242 (¶11) (Miss. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). "Where a defendant enters a plea on advice of

10

counsel, the attorney's performance is deemed 'deficient' for purposes of the *Strickland* standard only if it falls below 'the range of competence demanded of attorneys in criminal cases.'" *Garrett v. State,* 110 So. 3d 790, 793 (¶13) (Miss. Ct. App. 2012) (footnote omitted) (quoting *Baldwin v. State*, 923 So. 2d 218, 222 (¶12) (Miss. Ct. App. 2005)). "When a defendant pleads guilty, and later asserts ineffective assistance of counsel, he must demonstrate that his counsel's 'conduct proximately resulted in the guilty plea, and that but for counsel's errors, he would not have entered the plea.'" *Fortenberry v. State*, 151 So. 3d 222, 225 (¶11) (Miss. Ct. App. 2014) (quoting *Cole v. State*, 918 So. 2d 890, 894 (¶10) (Miss. Ct. App. 2006)). "This requires proof beyond the petitioner's own conclusory assertions." *Keyes v. State*, 304 So. 3d 637, 641 (¶8) (Miss. Ct. App. 2020).

### A. Lack of Communication

¶23. Hickerson argues that Rhoads's performance was deficient because of her lack of communication with him. He further argues that the jail visitation logs lacked the length of time per each visit and did not contain a detailed description of what was discussed. Most significantly, Hickerson argues that Rhoads visited him five times prior to his indictment and one time prior to the arraignment when she "should have been securing investigators and other experts for the defense."

¶24. The State attached jail visitation logs to its response, showing that Rhoads visited Hickerson at least thirteen times over the course of her one-year representation of him. The State also attached Rhoads's sworn affidavit to its response, in which she stated that she talked to Hickerson in depth about the case and that she talked to his family members as well.

11

In addition to Rhoads's affidavit, the State attached McCormick's affidavit. In his affidavit, he stated that he was present with Rhoads during visitations with Hickerson where there were discussions about strengths, weaknesses, potential defense, possible outcomes, and criminal procedure generally. Finally, the State attached an affidavit from LaBarre, which stated that he assisted Rhoads and McCormick in the case and represented Hickerson during the plea hearing. This evidence more than rebuts Hickerson's claims of lack of communication.

¶25. Hickerson also claims that Rhoads failed to give either him or Shapiro her case file. However, Hickerson made his personal request prior to the plea hearing while he was still incarcerated. Rhoads stated the following in her affidavit:

> Per my standard practice, I discussed with Mr. Hickerson the fact that I generally do not give copies of the entire case file of a Capital Murder charge to clients who are in custody at the Adult Detention Center. I discussed the reasons for that practice, to which Mr. Hickerson understood and agreed. He did, however, have copies of police and investigative reports.

When Shapiro later requested that Rhoads provide him a copy of Hickerson's file, Rhoads stated in her affidavit that "it was my understanding that he was requesting my notes, which I believe to be privileged and attorney work product." Shapiro did not follow up on the voice message that Rhoads left him nor seek court intervention to resolve any misunderstanding as to what Rhoads could provide. The circuit court has the discretion to entertain a motion to compel the delivery of the case file by a former attorney. *See Edmonds v. Williamson*, 13 So. 3d 1283, 1291-93 (¶¶24, 29-30) (Miss. 2009). In both instances, Rhoads's response was reasonable given the circumstances of this case.

¶26. Because the record reflects that Rhoads visited Hickerson numerous times, during

12

which there were substantive discussions about his case, and because Rhoads gave a justifiable explanation for not producing Hickerson's case file, Hickerson's claim of lack of communication is without merit.

### B. Failure to fully investigate the case regarding Hickerson's potential defenses and secure a better plea bargain

¶27. Hickerson argues that Rhoads failed to fully investigate the case, including the defenses he may have had and failed to interview potential witnesses. According to Hickerson, Rhoads also failed to negotiate a plea for heat-of-passion manslaughter but instead negotiated a plea for second-degree murder.

¶28. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Walker v. State*, 303 So. 3d 720, 727 (¶17) (Miss. 2020) (quoting *Strickland*, 466 U.S. at 690-91). This Court has stated that "[a] defense lawyer's failure 'to interview potential witnesses and make an independent investigation of the facts and circumstances of a case' will not, by itself, give rise to ineffective counsel." *Timmons v. State*, 176 So. 3d 168, 176 (¶33) (Miss. Ct. App. 2015) (quoting *Oliver v. State*, 20 So. 3d 16, 24 (¶23) (Miss. Ct. App. 2009)).

¶29. Here, Hickerson has not identified any witnesses that Rhoads failed to interview. Therefore, Rhoads cannot be faulted for failing to interview a person of whom she had no knowledge. Hickerson also argued that Rhoads should have negotiated a plea for manslaughter instead of second-degree murder. Although the maximum penalty for

manslaughter is less than the penalty for second-degree murder,[6] Hickerson was initially indicted for capital murder, which includes the death penalty. After the State withdrew the death penalty as a sentencing option, Hickerson still faced a life sentence without eligibility for parole. The State made an initial offer that Hickerson and his attorneys rejected. After further negotiations, Hickerson was presented with an offer to plead guilty to second-degree murder[7] and robbery, to which he agreed. Given the extraordinary proof of guilt in this case, this Court cannot second-guess counsel's recommendations. This Court has held that a lenient plea deal that results in a lesser sentence than the potential maximum penalty that a defendant could have received "weighs heavily against finding injustice in the denial of his ineffective-assistance-of-counsel claim." *Brown v. State*, 187 So. 3d 667, 672 (¶12) (Miss. Ct. App. 2016). Rhoads clearly negotiated a better outcome than what Hickerson initially faced, which afforded him a reduced sentence. Moreover, Rhoads was not Hickerson's only attorney at the time of his sentencing. McCormick and LaBarre were also representing Hickerson, but he makes no claim against them for failing to obtain a lesser sentence.[8]

---

[6] Pursuant to Mississippi Code Annotated section 97-3-21(2) (Rev. 2020), the maximum incarceration prescribed for second-degree murder is forty years if fixed by the court or life if fixed by jury. The maximum incarceration prescribed for manslaughter pursuant to Mississippi Code Annotated section 97-3-25(1) (Rev. 2020) is twenty years.

[7] Pursuant to Mississippi Code Annotated section 97-3-19(1)(b) (Rev. 2020), "[t]he killing of a human being without the authority of law by any means or in any manner . . . [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be second-degree murder."

[8] It is significant to note that Hickerson was represented by three attorneys. The Mississippi Supreme Court has stated that "when a defendant is represented by multiple attorneys, an ineffective-assistance claim is hard to mount." *Ronk v. State*, 267 So. 3d 1239,

14

### C. Insanity Defense and Mental Evaluation

¶30. Hickerson argues that Rhoads failed to investigate whether he had an insanity defense. Additionally, Hickerson argues that Rhoads was ineffective for not requesting a mental or competency examination. We disagree.

¶31. The Mississippi Supreme Court has stated that there must be a "concrete reason" to establish whether a mental evaluation is necessary or whether there is a viable insanity defense. *Parker v. State*, 273 So. 3d 695, 701 (¶20) (Miss. 2019). "Mississippi law does not recognize diminished capacity as a defense to a criminal charge." *Lewis v. State*, 170 So. 3d 1245, 1248 (¶13) (Miss. Ct. App. 2015) (citing *Brown v. State*, 981 So. 2d 1007, 1015 (¶24) (Miss. Ct. App. 2007)). For example, in *Stevens v. State*, 806 So. 2d 1031, 1052 (¶91) (Miss. 2001), the Mississippi Supreme Court held that "since Stevens [did] not allege that he lacked the ability to differentiate between right and wrong, the fact that he had been abusing alcohol, pain and anti-depressant medication should not have been presented to the jury to show that he lacked the ability to formulate specific intent on the guilt phase at trial."

¶32. The standard for "a defendant's affirmative defense of not guilty by reason of insanity . . . is measured at the time of the criminal offense" pursuant to the *M'Naghten* rule. *Parker*, 273 So. 3d at 698 (¶11) (citing *Davis v. State*, 551 So. 2d 165, 173 (Miss. 1989)). *See Queen v. M'Naghten*, 8 Eng. Rep. 718 (1843). "To establish a defense on the ground of insanity, [the *M'Naghten* rule states that] it must be clearly proved that at the time of committing of the act the accused was laboring under such defect of reason from disease of

_____

1256 (¶52) (Miss. 2019) (quoting *United States v. Dunfee*, 821 F.3d 120, 128 (1st Cir. 2016)).

the mind as (1) not to know the nature and quality of the act he was doing, or (2) if he did know it, that he did not know that what he was doing was wrong." *Parker*, 273 So. 3d at 689 (¶11) (quoting *Davis*, 551 So. 2d at 173).

¶33. In his PCR petition, Hickerson asserts that he "took a break from reality" when he stabbed Whigham. However, Hickerson's own declaration contradicts his claim that he had a psychotic break. Hickerson stated in his declaration that after engaging in anal sex, Whigham announced that she was born a male and was taking steps to become a female and that he became "immediately enraged beyond comprehension." Hickerson stated that he pulled out a knife and "stabbed Whigham what [he] believed to be 1 or 2 times" and that he had "no intention of committing a robbery." Clearly, Hickerson did not "take a break from reality" but rather made a conscious decision to pull out his knife and stab Whigham. Hickerson then took calculated steps to conceal the murder when he took Whigham's purse and cell phone and burned it. He also was aware of the murder he committed because he attempted to change his appearance by getting a haircut, shaving, and getting new glasses to avoid detection.

¶34. Even if Hickerson did not remember how many times he stabbed Whigham as he alleged, the Supreme Court has stated that "[n]ot remembering conduct is distinct from not knowing that conduct is wrong and does not entitle an accused to the insanity defense." *Parker*, 273 So. 3d at 701 (¶19). Further, "[t]his is especially so when the memory loss may be attributable to voluntary intoxication or drug use." *Id*. Moreover, "[i]f a person, when sober, is capable of distinguishing right and wrong and voluntarily intoxicates or drugs

16

himself to the extent that he does not know or understand his actions, e.g., steals, robs, or murders, he is responsible and he may be convicted and sentenced for the crime." *Id*. (quoting *Smith v. State*, 445 So. 2d 227, 231 (Miss. 1984)). In this case, Hickerson admits that he was intoxicated at the time of the murder. However, he was still capable of leaving the scene with Whigham's purse and cell phone with the intention to destroy both.

¶35. Additionally, Hickerson failed to state why he needed a mental evaluation in his declaration. He claimed no mental illness pre- and/or post-murder. Nor was there any history of mental illness in his family. His conduct after the murder was clear and calculated. Thus, the circuit court properly found that Rhoads was not ineffective in not requesting a mental evaluation for Hickerson.

¶36. Moreover, "[t]rial courts may place great emphasis upon declarations made under oath by a petitioner for post-conviction relief in open court during the taking of guilty pleas and sentencing." *Kambule v. State*, 19 So. 3d 120, 123 (¶10) (Miss. Ct. App. 2009) (citing *Holt v. State*, 650 So. 2d 1267, 1270 (Miss. 1994)). This Court has stated that "solemn declarations in open court carry a strong presumption of verity." *Cuevas v. State*, 304 So. 3d 1163, 1168 (¶24) (Miss. Ct. App. 2020). In *Cuevas*, this Court found that a defendant's verbal assurance to the trial court that he was satisfied with his counsel and the assistance that was provided demonstrated that his counsel was effective. *Id*. Like the defendant in *Cuevas*, Hickerson stated that he was satisfied with his attorney's performance in his plea petition and in his plea colloquy at his plea hearing.

¶37. Considering all the evidence presented, Hickerson failed to prove that Rhoads's

17

performance was "deficient" under *Strickland*. Therefore, the circuit court properly found no merit to this issue.

## Conclusion

¶38.    Although Hickerson failed to support his PCR petition with sworn affidavits, we find no merit to his ineffective-assistance-of-counsel claim, and we affirm the circuit court's order denying the PCR petition.

¶39.    **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. BARNES, C.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**